19632.   HARRISON *v.* CONSTITUTION PUBLISHING CO.

Decided February 13, 1930.   Rehearing denied March 1, 1930.

*Harry S. McCowen, George P. Whitman,* for plaintiff.
*Howell, Heyman & Bolding,* for defendant.

JENKINS, P. J. 1. (After stating the facts.) Irrespective of whether the plaintiff sought to go to trial on his petition for the recovery of special damages only, and thereby may have acquiesced in the previous ruling limiting the action to the recovery of special damages, we do not think the court erred in thus limiting the recovery. The whole gravamen of the complaint consisted in the inaccuracy of the newspaper in publishing the account of the action taken by the court, both in its order of June 11 and in its order of July 3. The first publication was manifestly inaccurate in prematurely announcing the grant of any sort of injunction; neither publication accurately or correctly set forth the terms of the order upon which the injunction was actually granted. It is alleged and conceded, however, that in the proceeding with which the publications dealt the court, after hearing evidence and argument of counsel, actually did pass an order enjoining the plaintiff "from leasing or permitting to be occupied any of the apartments in said apartment building to persons practicing illicit intercourse, or for purposes of assignation or the illegal sale or use of intoxicating liquor in said building or any division or room thereof until the further order of this court." Thus, so far as any claim that the publication was libelous per se is concerned (and only for this can general damages be recovered), what the publication stated the court had done was no more harmful to the plaintiff in a general sense than what the court actually did. In this connection it might be stated that the second newspaper publication went out of its way to state that on the hearing, "according to the evidence, Mr. Harrison had no knowledge of the conduct of the tenants in the building." Inasmuch as the complaint of the petition as to the false and libelous character of the publications centered throughout upon the inaccuracy of the newspaper in reporting the action of the court, and, reasonably construed, it nowhere seeks to deny or dispute the truth or correctness of the allegations of the solicitor-general's petition, or the statements attributed to the solicitor-general with reference to the conduct of certain tenants of the apartment, of which the plaintiff was in ignorance, the amendment

to the petition, setting up that these statements by the solicitor-general were not made during the trial, and therefore were not privileged, does not make their publication libelous per se.

2. While what constitutes the proximate cause of an injury is generally a question of fact for the jury, it has been held that a demurrer to a petition should be sustained where it appears from the plaintiff's pleadings that the negligence charged against the defendant was not the proximate and effective cause of the injury. *Southern Ry. Co.* v. *Barber,* 12 *Ga. App.* 286 (77 S. E. 172). "If the damages are only the imaginary or possible result of the tortious act, or other and contingent circumstances preponderate largely in causing the injurious effect, such damages are too remote to be the basis of recovery against the wrong-doer." Civil Code (1910), § 4509. In the instant case the court dismissed the petition, after it had been partially stricken by the court and amended by the plaintiff, which thus sought merely the recovery of special damages for loss of tenants of the building. The court's action was based on the theory that the damages were too remote, and that the alleged tortious act complained of did not constitute their proximate cause.

There can be no dispute that the newspaper would be fully within its rights in reporting the court proceeding against the plaintiff, charging him with maintaining a public nuisance of the kind and character described, irrespective of whether such a publication might result in loss, damage, or injury to the plaintiff or his property, the only limitation being that in reporting such a proceeding the newspaper must do so correctly. If the alleged immediate loss of tenants was occasioned by the action of the solicitor-general in instituting the proceeding to abate the alleged public nuisance, and by the action of the court in granting an injunction thereon, or was occasioned by the defendant in giving publicity thereto by fairly and correctly reporting the same, there would be no liability in the instant case. But we do not feel authorized to hold as a matter of law that the alleged almost immediate evacuation of the tenement was brought about wholly from such causes, so as to preclude a jury from finding that the incorrect statement published by the defendant on June 12 did proximately contribute thereto, wherein it was erroneously stated that a temporary injunction had been granted "under the State's nuisance law, restraining

J. M. Harrison, owner of the Kensington apartments, 51 Williams street, from using the apartment building for a period of one year, and ordering that any person entering the building in violation of the order be punished for contempt of court;" or that the incorrect statement published by the defendant company on July 4 did not in like manner proximately contribute to such result, wherein it was erroneously stated that a temporary injunction had been granted "restraining J. M. Harrison, owner of the Kensington apartments, 51 Williams Street, from using the apartment building until after September 6, on which date a hearing before a jury will be held on permanent injunction proceedings."

3. For the reasons set forth in the second division hereof, the court erred in dismissing the plaintiff's petition seeking special damages. *Judgment reversed. Stephens and Bell, JJ., concur.*

### ON MOTION FOR REHEARING.

JENKINS, P. J. The plaintiff, by a motion for rehearing, contends that the ruling of this court holding that the trial court properly held that there could be no recovery against the defendant of general damages was erroneous. It is contended that the statement that the petition "nowhere seeks to deny or dispute the truth or correctness of the allegations of the solicitor's petition, or the statements attributed to the solicitor with reference to the conduct of certain tenants of the apartment" overlooked the general allegations of paragraph 3 of the petition that the publication was false and malicious, and the further allegation of paragraph 3 (a) of the amendment, to the effect that the first publication set forth in the petition, "in so far as the first sentence thereof is concerned, was not made during the progress of any trial of the petition referred to in said publication," and that this particular portion of the publication "necessarily conveyed to the reading public and to the readers of the newspaper in which said publication appeared the impression that wild parties had been staged and were being staged, liquor sold, and other forms of vice participated in, in the apartments of petitioner, referred to in said publication, with the knowledge, consent, and approval of petitioner; and that such portion of said publication, in and of itself, and also in connection with the portion of said publication relating to the grant of a temporary injunction, was false, malicious, and libelous, tending to and actually exposing petitioner to public hatred, contempt, and ridicule."

It is true that the original petition alleged in general terms that the publication was false and malicious, but we are still of the opinion that the original petition, in seeking to set forth wherein the publication was false, confined and limited itself to the inaccuracy of the newspaper in publishing the action of the court.

We are still of the opinion, as set forth in the original decision, that neither the original petition nor the amendment in any way sought to deny or dispute the truth or correctness of the statements attributed to the solicitor with reference to the conduct of certain tenants of the particular apartment house, that "the solicitor pointed out that the apartment had been raided time after time, but continued to operate as a public nuisance. He added that people are allowed to congregate there for illegal purposes and that liquor was continually sold there."

It is true, as set forth by movant in his motion for a rehearing, that paragraph 3 (a) of the amendment does allege that the first sentence of the first publication, containing an alleged unprivileged statement of the solicitor, necessarily conveyed to the reading public the impression that wild parties had been and were being staged, liquor sold, and other forms of vice participated in, in the apartments of the plaintiff, and that such publication was false, malicious, and libelous, as tending to expose the plaintiff to public hatred, contempt, and ridicule. It will be recalled that, as set forth in the petition, the court, after hearing evidence and argument in the proceeding by the solicitor to abate the alleged nuisance, passed the following order: "The application for temporary injunction coming on to be heard in the above-stated cause, after evidence had been introduced, followed by argument of counsel, it is ordered that J. M. Harrison, as owner and manager of the Kensington apartments, 51 Williams Street, Atlanta, Georgia, be and he is hereby temporarily enjoined from leasing or permitting to be occupied any of the apartments in said apartment building to persons practicing illicit intercourse or for purposes of assignation or the illegal sale or use of intoxicating liquor in said building or any division or room thereof, until further order of this court." We are of the opinion that notwithstanding the allegations in paragraph 3 (a) of the amendment to the plaintiff's petition, the defendant could not be held liable in general damages on account of the publication of the statement made by the solicitor, even though it were made

at a time and place such as would render it unprivileged, when the statement amounted to nothing more than a synopsis of the charges contained in the solicitor's complaint, and when it appears that the court, upon the hearing, adjudicated the truth of the allegations by granting an injunction restraining the defendant from doing the things which the petition charged and which the solicitor said had been done.

It might not be amiss, however, in a matter of this character, to repeat what was said in the original syllabus, that the report of the trial itself stated that the evidence all went to show that the plaintiff had no knowledge of any misconduct of the tenants of the building.                                           *Rehearing denied.*