38836. SAVANNAH NEWS-PRESS, INC. v. HARTRIDGE.

DECIDED JUNE 26, 1961.

*Stephens & Gignilliat, Thomas H. Gignilliat,* for plaintiff in error.

*Lewis, Wylly & Javetz,* contra.

JORDAN, Judge. In determining whether a newspaper article is libelous, it is necessary to consider the entire article in or-

der to arrive at its true meaning. It would be well, therefore, to set forth the articles in their entirety, including the headlines, as they were printed. The first article published on November 13, 1958, on which count 1 is based, is as follows:

"WERE SENTENCED ONCE.
TWO ACQUITTED OF ASSAULT BY
DISTRICT COURT JURORS.

"Two white men who had been sentenced to 20 years in prison by Federal District Judge Frank M. Scarlett for rape were acquitted of the crime Wednesday.

"The second trial, ordered by the U. S. Court of Appeals because of prejudicial remarks made by Scarlett to the jury, was conducted by Attorney John Joseph Sullivan. He had been brought into the case after Scarlett's 20-year sentence. He was assisted by Attorney Julian Hartridge, Sr., one of the two original defense counselors.

"The two defendants, Richard T. Cook, Jr., 36, and Vernon C. Hill, 23, had been indicted for raping an 18-year-old girl on the Ft. Stewart reservation in October, 1956. Since the offense was allegedly committed on government property, the federal court had jurisdiction in the case.

"At the end of the first trial in May, 1957, the foreman of the jury reported to the bench that the jury could not agree on a verdict.

"Scarlett told him it was 'no credit to a juror to fail to agree on a verdict because of a pure spirit of stubbornness.' He said the case has been explored fully and it was the duty of the jurors to come to a joint conclusion.

"The week-end was approaching at the time and Scarlett told the jurymen to arrange for fresh linen and shaving necessities so they could deliberate 'until Sunday, if necessary.' He indicated he was planning to go to his home in Brunswick for the week-end.

"About an hour later, a verdict of guilty was returned, with a recommendation for the mercy of the court. Scarlett was quoted in the press at the time as saying he 'did not see how the jury could have acquitted the two men.'

"When Sullivan entered the case, he petitioned the Court of

Appeals for a reversal because of the judge's comments and won the new trial.

"The attorney raised a strong question as to whether the alleged crime occurred on government property. He produced a survey of the area prepared at his request by the engineering firm of Thomas and Hutton. This tended to show that the site where the girl said she was criminally assaulted was nine-tenths of a mile from the Ft. Stewart boundary.

"Sullivan also put Cook on the stand who repeated his previous assertion that he had not molested the girl. Hill made no statement at all in the second trial.

"The jury was out about an hour and a half before returning the not guilty verdict."

The petition alleged that Hartridge had been engaged in the practice of law since 1922 and had earned for himself a reputation in his community as a lawyer of good professional skill and ability; that the publication was a false, wilful and malicious defamation of petitioner, in effect making charges against him with reference to his profession and calculated to injure him therein. The petition further alleged that the publication failed to state that the other original defense counselor was Mr. Shelby Myrick, Sr., the oldest and most experienced and distinguished member of the bar of that county; that the publication contained a deliberate falsehood that when another attorney entered the case, he petitioned the Court of Appeals for a reversal and won the new trial when the truth was that the petitioner personally and by himself handled the successful appeal for a new trial; that such false publication imputed to the petitioner a gross want of skill and competence in his profession.

An examination of the statements in the publication with reference to the attorneys shows that: (a) The second trial was conducted by Attorney Sullivan; (b) Sullivan had been brought into the case after the 20-year sentence was imposed; (c) he was assisted in the trial by Attorney Hartridge; (d) Attorney Hartridge was one of the two original defense counselors. None of these statements is alleged to be false by the petition and they are therefore taken as true. The only complaint in the petition with reference to these particular statements is that the publica-

tion failed to state that the other "original defense counselor" was Mr. Shelby Myrick, Sr.   Therefore, the only statement in the publication claimed to be false was the statement that when Sullivan entered the case, he petitioned the Court of Appeals for a reversal because of the judge's comments and won a new trial. Assuming this statement to be false, as we must on demurrer, was it, as a matter of law, defamatory or libelous of the plaintiff?   We think not.   It is true that it failed to give proper credit to the plaintiff, but of itself contained no imputation of professional incompetence to the plaintiff.   Even if Hartridge had turned over the appeal to Sullivan after associating him in the case, we cannot see where an assignment of this duty to Sullivan would have inferred incompetence on the part of Hartridge so as to damage his professional reputation.   It is understood by lawyers, and the public as well, that attorneys working together on a complicated case usually assign themselves specific duties commensurate with the individual talents of each attorney.   Indeed, the very purpose of associating additional attorneys is to assist in conducting an appeal, the cross-examination of witnesses, the striking of a jury, or some other duty in which the associated attorney might be especially proficient.   Therefore, to say that one attorney associated another to assist in any phase of a legal proceeding cannot be said to be an admission of incompetence on the part of such attorney, nor understood as such by the reading public.

Under such circumstances, the false statement could only mean that one attorney in the case was credited with accomplishing an act which was in fact accomplished by his associate.   We cannot see where such false credit could injure the professional reputation of one who failed to receive the proper credit.   Neither can we construe the article, when considered as a whole, to infer or charge the plaintiff with gross ignorance or unskillfulness in his profession such as would tend to impair his professional reputation or law practice.   Indeed, the article as a whole recites the successful story of two attorneys working together in securing a new trial for their clients and a verdict of acquittal on the second trial.   Since professional ethics forbids attorneys to advertise, such a story of the successful defense of their clients is

usually looked upon by attorneys as a most welcome form of publicity. The article not being libelous per se or subject to be construed as having a defamatory meaning, the trial court should have sustained the demurrer to count 1.

The basis for count 2 of the petition is an article published on September 25, 1959, which reads as follows:

"LAW FINDS ANCIENT CAR
HAD VERY GOOD DRIVER.
By Patrick Kelly
Staff Writer.

"There was this old model Nash going north on Habersham Street, Patrolman T. R. Gray said.

"When he got behind it, it was forever trying to cross the white center line—particularly going around Savannah's famous squares.

" 'I never heard of a sober man driving that way.' Gray told City Police Court Judge George E. Oliver, Thursday. 'So I tried to stop him.'

"Gray said he had very little luck. Every time he would turn on the flashing red light on his patrol car and sound his siren, the Nash would stop all right—but it wouldn't stay stopped.

"Gray managed to snag the driver at Habersham Street and Oglethorpe Avenue, right outside police headquarters—a strategic location if there ever was one.

" He invited me to go inside headquarters with him,' the policeman said. 'So I went. I had no idea who he was.'

"His quarry proved to be a distinguished member of the Savannah bar, Julian Hartridge, Sr., once solicitor general of the Eastern Judicial Circuit and assistant U. S. Attorney.

" 'I wasn't doing a single, solitary thing,' Hartridge spiritedly informed Oliver as he answered to a reckless driving charge. 'It's a fine thing when a citizen can't drive around town without being harassed by the police.'

" There was no drinking involved"? the judge asked Gray.

"Before the policeman could reply Hartridge answered.

" 'I didn't even have the proverbial one beer,' he cried in anguish. Gray agreed this was so.

" 'Do you wish to make a statement?' Oliver asked.

" 'I'll make a statement and submit to cross-examination!' he exclaimed. 'I've never heard a recitation more full of half-truths in my life! The fact is when the officer sounded his klaxon, I had no idea he wanted me, for I wasn't doing anything!' the lawyer said.

" 'How about crossing the center line as you went around the squares?' Oliver inquired.

" 'There were parked cars in the way! I had to cross the center line,' Hartridge responded.

" 'I didn't and I was right behind him.'

" You're a younger man," Oliver observed.

" 'And you drove a newer car,' suggested Attorney Emanuel Lewis, who had come to his colleague's aid.

" 'At the taxpayers' expense! snorted Hartridge.

"Oliver found nothing on which to convict Hartridge and dismissed the case.

"But the attorney was not too happy. He had found himself a defendant in a police court matter for the first time in his life."

The article was carried on the back page of the newspaper, which page was captioned, "Local News" and published with it on the same page was a photograph of the plaintiff. Count 2 of the petition alleged that "Never in the history of the City of Savannah has a respectable citizen been singled out for publicity of this character before said date, to wit: a two-column news spread with photograph publicizing an alleged minor traffic violation, particularly one of which the citizen was not guilty," and that, "The purpose and intent of said publication was to expose petitioner to public ridicule and contempt, to make him the butt of jokes and an object of levity, and thus to humiliate him without rhyme, reason or cause." By amendment it was further alleged that, "To effect this malicious purpose, said publication was written and arranged so as to represent petitioner as a reckless and irresponsible person, one who drove an automobile in the same manner as a drunken person would, which publication was thereby false."

For the purpose of demurrer, the statements contained in the article must be taken as true, since none is alleged to be false in

the petition. The amendment to the petition fails to amount to an affirmative statement that any particular portions of the article are false. A libel is a false and malicious defamation of another. *Code* § 105-701. "A demurrer will lie where the petition shows on its face that the printed matter relied on to constitute the libel is true, because libel in order to be actionable must be shown to be *false*. Where the petition affirmatively shows that it is not *false,* but on the other hand shows it to be *true,* then such petition fails to state a cause of action for libel, the falsity of the printed matter being an essential element to such a cause of action." *Savannah News-Press, Inc. v. Harley,* 100 Ga. App. 387 (1a) (11 SE2d 259). See also *Constitution Pub. Co. v. Andrews,* 50 Ga. App. 116 (177 S.E. 258).

A fair and honest report of a judicial proceeding is conditionally privileged. *Code* § 105-704; *Atlanta Journal Co. v. Doyal,* 82 Ga. App. 321 (60 SE2d 802). A newspaper is fully within its rights in reporting a court proceeding, the only limitation being that in reporting such a proceeding it must do so correctly. *Harrison v. Constitution Pub. Co.,* 41 Ga. App. 102 (152 SE 131). In the instant case there is no affirmative allegation that the article is not a truthful report of the judicial proceedings as they occurred in the recorder's court. The fact that the newspaper saw fit to use the report of this incident as a "feature" or "human interest" story would not of itself render it libelous. As stated by Judge Townsend in *Cook v. Atlanta Newspapers,* 98 Ga. App. 818, 820 (107 SE2d 260), "Whether the calculated publicity given a personal matter, newsworthy if at all only because of the plaintiff's sensitivity to public reaction, might be unkind, morally reprehensible, or legally actionable as an invasion of privacy, is not before this court. It was not false or libelous, and accordingly the trial court did not err in sustaining the general demurrer and dismissing the petition."

It is our opinion that neither count of the petition sets forth, as a matter of law, a libelous defamation of the petitioner and that the trial court erred in overruling the demurrer to each count.

*Judgment reversed. Townsend, P.J., and Frankum, J., concur.*