## A01A1408. MATHIS v. CANNON.
### (556 SE2d 172)

BLACKBURN, Chief Judge.

In this case involving libelous postings in an Internet chat room, Bruce Mathis appeals the trial court's grant of summary judgment to the plaintiff, Thomas C. Cannon, contending that the trial court erred by: (1) finding that the Internet postings were libelous per se; (2) failing to find that the postings regarded a matter of public concern and Cannon is a limited purpose public figure, thereby requiring Cannon to prove actual malice; and (3) failing to find that Cannon's failure to request a retraction on the Internet site in question precluded an award of punitive damages pursuant to OCGA §§ 51-5-11 and 51-5-12. For the reasons set forth below, we affirm.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

*Matjoulis v. Integon Gen. Ins. Corp.*[1]

Viewing the evidence in this light, the record shows that, on November 4, 1999, Mathis, using the screen name "duelly41," posted several messages in an Internet chat room regarding the handling and disposal of waste material in Crisp County. In these messages, Mathis criticized Cannon, an officer and director of Waste Industries, Inc., a company whose subsidiary, Trans Waste Services, Inc.,[2] had contracted with the Solid Waste Management Authority of Crisp County to haul waste products to a controversial disposal site.

The first message by Mathis, posted at 11:14 p.m., stated: "**what**

---

[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).
[2] Cannon also served as president of Trans Waste.

**u doing???** by: *duelly41* does [Waste Industries] think they can take our county — stop the trash flow cannon we love u for it — our county not a dumping ground and sorry u and lt governor are mad about it — but that is not going to float in Crisp County — so get out now u thief." The second message, posted at 11:27 p.m., stated: "**cannon a crook????** by: *duelly41* explain to us why you got fired from the calton company please???? want hear your side of the story cannon!!!!!!!!" The third message, posted at 11:52, stated:

> **cannon a crook** by: *duelly 41* hey cannon why u got fired from calton company???? why does cannon and lt governor mark taylor think that crisp county needs to be dumping ground of the south??? u be busted man crawl under a rock and hide cannon and poole!!! if u deal with cannon u a crook too!!!!!! so stay out of crisp county and we thank u for it.

After being made aware of these messages, Cannon sued Mathis for libel per se and libel, requesting both general and punitive damages. Both sides requested summary judgment, and the trial court ultimately granted summary judgment to Cannon. Mathis now appeals this ruling.

1. Mathis contends that the trial court erred by finding that his criticisms of Cannon constituted libel per se. We disagree.

OCGA § 51-5-1 (a) provides: "A libel is a false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule." In turn, OCGA § 51-5-4 makes certain disparaging comments libelous per se. Included in this category are statements which "[impute] to another a crime punishable by law," OCGA § 51-5-4 (a) (1), and "[make] charges against another in reference to his trade, office, or profession, calculated to injure him therein," OCGA § 51-5-4 (a) (3).

In Mathis' first e-mail posting, the statement that Cannon was a "thief" falls within the definition of libel per se, as theft is a crime punishable by law. See, e.g., *Stone v. McMichen*[3] (accusation of theft constituted libel per se). "To impute the crime of theft to a person is actionable per se without proof of special damages." *Melton v. Bow.*[4]

In Mathis' second and third e-mail postings, the false statements about Cannon's prior job history, which clearly imply that he was terminated for dishonest behavior, are libel per se under the aegis of OCGA § 51-5-4 (a) (3). See, e.g., *Strange v. Henderson*[5] ("[a] false

---

[3] *Stone v. McMichen*, 186 Ga. App. 510, 511 (2) (367 SE2d 839) (1988).
[4] *Melton v. Bow*, 241 Ga. 629, 630-631 (247 SE2d 100) (1978).
[5] *Strange v. Henderson*, 223 Ga. App. 218, 220 (1) (477 SE2d 330) (1996).

accusation that the owner of rental property failed to insure or pay property taxes on such property could reasonably be construed to refer to one's 'trade, profession, or business' ").

Mathis' argument that he cannot be held liable for libel because his e-mail postings contained his opinions holds no merit.

> [T]here is no wholesale defamation exemption for anything that might be labeled opinion. To say otherwise would ignore the fact that expressions of opinion may often imply an assertion of objective fact. The pivotal questions are whether the challenged statements can reasonably be interpreted as stating or implying defamatory facts about plaintiff and, if so, whether the defamatory assertions are capable of being proved false.

(Citation and punctuation omitted.) *Jaillett v. Ga. Television Co.*[6] There is no question that Mathis' postings state and imply defamatory facts about Cannon, namely that he was a thief and that he was fired from a former job for wrongdoing. It is equally clear that these defamatory assertions of fact may be proven false. As such, Mathis is not exempt from liability in this case as he contends.

2. Mathis contends that the trial court erred by finding that Cannon is not a limited purpose public figure. If Cannon did fit this category and the Internet postings regarded a matter of public concern, Cannon would have to prove that Mathis made the statements with actual malice in order to recover. See, e.g., *New York Times Co. v. Sullivan.*[7] The facts of this case, however, do not support a finding that Cannon was a limited purpose public figure.

One may become a limited purpose public figure by thrusting himself to the forefront of a public controversy for the purpose of influencing the resolution of issues surrounding that controversy. *Gertz v. Robert Welch, Inc.*[8] This issue may be analyzed by considering three questions: (1) Did the plaintiff voluntarily thrust himself into the vortex of a specific controversy? (2) What were the extent and nature of the plaintiff's participation in the controversy? and (3) Did the plaintiff seek out the attention of the public in order to influence the resolution of the controversy? See *Hemenway v. Blanchard.*[9]

The record shows that Trans Waste is a corporation which contracted with Crisp County to carry waste to and from a specific facility managed and maintained by the Crisp County Solid Waste Man-

---

[6] *Jaillett v. Ga. Television Co.*, 238 Ga. App. 885, 890 (520 SE2d 721) (1999).
[7] *New York Times Co. v. Sullivan*, 376 U. S. 254 (84 SC 710, 11 LE2d 686) (1964).
[8] *Gertz v. Robert Welch, Inc.*, 418 U. S. 323 (94 SC 2997, 41 LE2d 789) (1974).
[9] *Hemenway v. Blanchard*, 163 Ga. App. 668, 671 (294 SE2d 603) (1982).

agement Authority. Trans Waste, in turn, is a subsidiary of Waste Industries, of which Cannon is an officer and shareholder. The evidence supports the trial court's findings that Cannon simply acted in this matter as a businessman looking out for his company's financial well-being. Although Cannon attended meetings of the Solid Waste Management Authority, there is no evidence that he had control or that he sought to control the operation of the waste management facility in question. Moreover, the record does not support a finding that Cannon chose to voluntarily thrust himself to the forefront of the controversy. To the contrary, it appears that Cannon was involuntarily drawn into the controversy in his position as an officer of Waste Industries and Trans Waste. Cannon did not insert himself in the public controversy over Crisp County's policies, and, as such, he was not a limited purpose public figure in this matter. See, e.g., *Western Broadcasting of Augusta v. Wright*.[10]

3. Finally, Mathis contends that the trial court erred by not finding that Cannon's failure to request a retraction on the Internet site where the messages were posted precluded an award of punitive damages. OCGA § 51-5-11 (b) (1) (B) provides, in pertinent part, that a plaintiff cannot receive punitive damages in a civil action for libel where

> the defendant, in a regular issue of the newspaper or other publication in question, within seven days after receiving written demand, or in the next regular issue of the newspaper or other publication following receipt of the demand if the next regular issue was not published within seven days after receiving the demand, corrected and retracted the allegedly libelous statement in as conspicuous and public a manner as that in which the alleged libelous statement was published.

OCGA § 51-5-12 applies a similar retraction rule to the visual or sound broadcast of a defamatory statement. Following the plain language of these statutory provisions, they would not appear to be applicable to Internet postings. See, e.g., *Williamson v. Lucas*[11] (by its plain language OCGA § 51-5-11 meant to apply only to newspapers and other printed media). First, they contemplate actions between an aggrieved party and a newspaper, television station, or radio station. They do not appear to address actions between two individuals. Second, these statutes do not reach Internet media such as chat rooms. The statutes, to the contrary, address media which broadcast pro-

---

[10] *Western Broadcasting of Augusta v. Wright*, 182 Ga. App. 359 (356 SE2d 53) (1987).
[11] *Williamson v. Lucas*, 171 Ga. App. 695, 697 (4) (320 SE2d 800) (1984).

grams at specific times to specific audiences, whereby a retraction would likely be heard by the same audience hearing the original defamatory remarks. To the contrary, the audience in a chat room is in a constant state of flux, making the remedy envisioned by OCGA § 51-5-12 inapplicable. Accordingly, the trial court did not err in finding that these statutes did not preclude Cannon's claim for punitive damages.

*Judgment affirmed. Pope, P. J., and Mikell, J., concur.*

DECIDED NOVEMBER 2, 2001 —

*James W. Hurt*, for appellant.
*Jones, Cork & Miller, Robert C. Norman, Jr., Hubert C. Lovein, Jr.*, for appellee.