A07A2069. LUCAS et al. v. CRANSHAW et al.
(659 SE2d 612)

PHIPPS, Judge.

John Lucas and Antebellum Builders, Inc. (ABI) brought this action against David Cranshaw and a newspaper he edits known as Buyers' Guide & News (Buyers' Guide), seeking damages on theories of libel and libel per se. Lucas and ABI appeal the trial court's grant of the Cranshaw defendants' motion for summary judgment on both issues. We find no error and affirm.

> On appeal from the grant of summary judgment this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.[1]

---

[1] *Cox Enterprises v. Nix*, 274 Ga. 801, 804 (2) (560 SE2d 650) (2002) (citation and punctuation omitted).

The facts here are undisputed. ABI, a paving and grading company owned and operated by Lucas, was hired by The Boss King Group, LLC (Boss King) to perform grading and paving work on a tract of land owned by Boss King adjacent to another 23-plus acre tract owned by the Houston County School District. The Houston County Board of Education (BOE) purchased the 23-plus acre tract with the intent of building an elementary school on it. Boss King agreed to build a road free of charge to provide access to the school. In doing the road work, ABI discovered that it would need extra dirt to fill the road. To obtain the fill dirt, ABI removed dirt and trees from BOE's tract under the mistaken belief that the dirt was being taken from the adjacent tract owned by Boss King.

Buyers' Guide is a free, weekly newspaper published in Houston County. In a March 2006 edition, Cranshaw wrote an article in Buyers' Guide concerning ABI's removal of dirt and trees from the BOE's land. The article was entitled, "A Rape of Public Land." It related that the elementary school was to have been built on the "forested hilltop" of the "23-plus acre site," but that "old-growth pine and hardwood trees" along with "in the neighborhood of 30,000-to-36,000 cubic yards of dirt" had all been removed from the hilltop, so that, in the words of a BOE member, " 'The property as we knew it just wasn't here anymore. . . . It was gone.' " The article further related that BOE members had responded by unanimously voting to seek an injunction in superior court requiring several local developers, contractors, and companies to stay away from the school site and not alter the property in any way. Boss King and ABI along with various individuals were named as anticipated defendants in the suit. The article stated that the named individuals owned the adjacent property, had sold the 23-plus acre tract to the BOE, had admitted to removing the trees and dirt, and had "agreed in principle to 'make things right.' " The article further related that "before the purchase, the school board had talked of building a model school, a 'showpiece' which would take advantage of the topography and natural growth flora[,]" but "[t]hat opportunity would seem to be lost at this point." In concluding, the article stated that the BOE's chairperson was "fit to be tied over what has happened." Above the article was a photograph of the site where trees and soil had been removed.

In the next week's edition of the Buyers' Guide, Cranshaw wrote a follow-up article entitled "Can BOE Make Do with Less?" That article stated that at its monthly meeting to be held that week the BOE would consider the matter of "the piece of property owned by the board which has been stripped of forest and soil — without its knowledge or permission, we are told." The article related that school officials had met with "those who the board says have admitted to removing dirt and trees in an effort to reach a settlement which would

cover damage allegedly done to the property[,]" and that the meetings had "met with what one person close to the talks calls 'limited success.' " The article further stated that the matter of damages at the upcoming meeting would be discussed in closed session "exempted from open meeting discussion since they involve pending or prospective litigation." The second article also referenced the first, described the property in somewhat greater detail, and identified ABI, Boss King, and the individual development owners as the parties who had been "meeting with school officials to discuss damages and related matters."

Letters from unnamed readers responding to the first article were published in the "Speak Out" column of that week's Buyers' Guide. One letter characterized the activity described in the article as a trespass to the land. Other letters expressed disappointment at the BOE's failure to do nothing more than seek an injunction and suggested that persons "who violated property rights . . . be prosecuted or something if they confess or are found guilty." Yet other letters referred to "the theft of the school board's dirt and trees from the land" and to "the dirt stolen from the school board when somebody went in and cut down trees and hauled off the dirt."

1. The trial court did not err in awarding summary judgment to the Cranshaw defendants on the Lucas plaintiffs' libel claim.

"A libel is a false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule."[2] "As to proof of malice, proof that the writing is false, and that it maligns the private character or mercantile standing of another, is itself evidence of legal malice."[3]

Because falsity is an essential element of both libel and slander, "truth is a 'perfect defense' to a defamation action."[4] Accordingly, "[w]here a publication is substantially accurate, and if the article is published by the newspaper in good faith and the same is substantially accurate, the newspaper has a complete defense."[5] "As long as facts are not misstated, distorted or arranged so as to convey a false and defamatory meaning, there is no liability for a somewhat less than complete report of the truth, even if the newspaper . . . conveys . . . its own editorial opinions."[6]

---

[2] OCGA § 51-5-1 (a).

[3] *John D. Robinson Corp. v. Southern Marine &c. Co.*, 196 Ga. App. 402, 404 (1) (395 SE2d 837) (1990) (citation, punctuation and emphasis omitted).

[4] *Bird v. Weis Broadcasting Corp.*, 193 Ga. App. 657, 658 (2) (388 SE2d 710) (1989).

[5] *Blomberg v. Cox Enterprises*, 228 Ga. App. 178, 180 (1) (491 SE2d 430) (1997) (citation and punctuation omitted).

[6] *Mathews v. Atlanta Newspapers*, 116 Ga. App. 337, 340 (4) (157 SE2d 300) (1967).

Furthermore, "[i]n determining whether a newspaper article is libelous, it is necessary to consider the entire article in order to arrive at its true meaning."[7]

> A publication claimed to be defamatory must be read and construed in the sense in which the readers to whom it is addressed would ordinarily understand it. So the whole item, including display lines, should be read and construed together, and its meaning and signification thus determined. When thus read, if its meaning is so unambiguous as to reasonably bear but one interpretation, it is for the judge to say whether that signification is defamatory or not. If, upon the other hand, it is capable of two meanings, one of which would be libelous and actionable and the other not, it is for the jury to say, under all the circumstances surrounding its publication, including extraneous facts admissible in evidence, which of the two meanings would be attributed to it by those to whom it is addressed or by whom it may be read.[8]

"In considering whether a writing is defamatory as a matter of law, we look at what construction would be placed upon it by the average reader."[9]

The plaintiffs' central argument is that the headline reference to a "rape" of public land — with the body of the article failing to inform the reader that the land had been damaged under the mistaken belief that removal of the dirt and trees was authorized — resulted in a distorted article that conveyed a false and defamatory meaning. We cannot agree.

There is no claim that any statement in the body of either article was untrue.[10] The articles accurately stated that "old-growth pine and hardwood trees" along with "in the neighborhood of 30,000-to-36,000 cubic yards of dirt" had been removed, so that "the piece of property" had been "stripped of forest and soil — without [the BOE's] knowledge or permission." In relating that the BOE was seeking an injunction and attempting to resolve the matter of damages with the offending parties through discussions that involved "pending or

[7] *Savannah News-Press v. Hartridge*, 104 Ga. App. 22-23 (120 SE2d 918) (1961).

[8] *Constitution Publishing Co. v. Andrews*, 50 Ga. App. 116, 117 (177 SE 258) (1934) (citations and punctuation omitted); see *Collins v. Creative Loafing Savannah*, 264 Ga. App. 675, 679 (1) (c) (592 SE2d 170) (2003).

[9] *Cox Enterprises v. Nix*, supra, 274 Ga. at 803 (1) (citation and punctuation omitted).

[10] See *Mathews v. Atlanta Newspapers*, supra.

prospective litigation," the clear implication of the articles was that a civil wrong had been committed. Viewing the first article in its entirety, we conclude that the average reader would have interpreted the headline's use of the term "rape" as an attempt to convey the severity of the damage to the land rather than to characterize the conduct that resulted in the damage as criminal. Viewed in context, description of what had occurred as a "rape" of the land constituted "a mere statement of opinion or rhetorical hyperbole" that "cannot form the basis of a defamation claim."[11]

> We have previously held that there is no wholesale defamation exemption for anything that might be labeled "opinion." To say otherwise would ignore the fact that expressions of "opinion" may often imply an assertion of objective fact. The pivotal questions are whether the challenged statements can reasonably be interpreted as stating or implying defamatory facts about plaintiff and, if so, whether the defamatory assertions are capable of being proved false.[12]

> The requirement that, to be actionable, a statement of opinion must imply an assertion of objective facts about the plaintiff unquestionably excludes from defamation liability not only statements of rhetorical hyperbole but also statements clearly recognizable as pure opinion because their factual premises are revealed. . . . If an opinion is based upon facts already disclosed in the communication, the expression of the opinion implies nothing other than the speaker's subjective interpretation of the facts. Thus, the Restatement notes that "a statement of (opinion) is actionable only if it implies the allegation of *undisclosed* defamatory facts as the basis for the opinion."[13]

Here, Cranshaw opined that there had been a rape of the land. The contents of the article accurately set forth the factual premise for Cranshaw's opinion that the damage to the land had been so severe as to justify a hyperbolic description of it as a "rape." In that circumstance, "[t]he failure to include more information or the omission of information from a published statement does not constitute

---

[11] *Jaillett v. Ga. Television Co.*, 238 Ga. App. 885, 890 (520 SE2d 721) (1999).
[12] Id. (citations and punctuation omitted).
[13] Id. (citations and punctuation omitted; emphasis in original).

libel, even though it is not the whole truth."[14] As such, the article did not constitute actionable libel.[15]

2. For reasons previously given, and for additional reasons set forth below, the article did not constitute libel per se.

Under OCGA § 51-5-4 (a), slander per se

> consists in: (1) Imputing to another a crime punishable by law; (2) Charging a person with having some contagious disorder or with being guilty of some debasing act which may exclude him from society; (3) Making charges against another in reference to his trade, office, or profession, calculated to injure him therein.[16]

Unlike other types of slander, statements that are slanderous per se support a defamation action without proof of special damages.[17] Although OCGA § 51-5-4 refers to slander and not libel, "[t]he definition of slander in Georgia has been incorporated into the definition of libel."[18] Therefore, that which is slander per se can also become libel per se under the aegis of OCGA § 51-5-4.[19]

In *Bullock v. Jeon*,[20] however, we held that "[a]bsent a sexual connotation, disparaging words allegedly imputing a sexual crime will not constitute slander per se." Unquestionably, Cranshaw did not intend, and the readers of the Buyers' Guide did not interpret, the term "rape" as having any sexual connotation in the context used in the article. For that reason, libel per se under OCGA § 51-5-4 (a) (1) has not been shown. Nor has libel per se under OCGA § 51-5-4 (a) (3) been shown, as

> the statements at issue pertain only to a single instance. Language imputing to a business or professional man ignorance or mistake on a single occasion and not accusing him of general ignorance or lack of skill is not actionable per se. This is because a charge that plaintiff in a single instance

---

[14] *McDonald v. Few*, 270 Ga. App. 671, 672 (1) (607 SE2d 265) (2004) (citations omitted); see *Yandle v. Mitchell Motors*, 199 Ga. App. 211-212 (404 SE2d 313) (1991) (having truthfully reported what occurred, defendant may have had a moral duty also to report extenuating circumstances, but failure to have done so was not breach of legal duty that exposed it to liability for defamation).

[15] See *Webster v. Wilkins*, 217 Ga. App. 194, 195 (1) (456 SE2d 699) (1995).

[16] See id. at 196 (2).

[17] See OCGA § 51-5-4 (b); *Strange v. Henderson*, 223 Ga. App. 218, 219 (477 SE2d 330) (1996).

[18] *Hayes v. Irwin*, 541 FSupp. 397, 431, n. 34 (N.D. Ga. 1982) (citations omitted), aff'd without opinion, 729 F2d 1466 (11th Cir. 1984).

[19] See *Mathis v. Cannon*, 252 Ga. App. 282, 283 (1) (556 SE2d 172) (2001).

[20] 226 Ga. App. 875, 877 (2) (487 SE2d 692) (1997).

was guilty of a mistake, impropriety or other unprofessional conduct does not imply that he is generally unfit.[21]

And the Lucas plaintiffs make no claim of libel per se under OCGA § 51-5-4 (a) (2).

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED FEBRUARY 6, 2008.

*Hall, Bloch, Garland & Meyer, Christina K. Brosche,* for appellants.

*Schiff & Hardin, Walter H. Bush, Jr.,* for appellees.

---

[21] *Crown Andersen v. Ga. Gulf Corp.,* 251 Ga. App. 551, 554 (2) (554 SE2d 518) (2001) (citations and punctuation omitted).