A07A2042, A07A2043. JONES v. THE ALBANY HERALD PUBLISHING COMPANY, INC. et al.; and vice versa.
(658 SE2d 876)

BARNES, Chief Judge.

Sterling P. Jones sued The Albany Herald and reporter Brian Russell for libel. Following discovery, the defendants moved for summary judgment. The trial court granted summary judgment in part, finding that Jones was an involuntary limited-purpose public figure, and denied it in part, finding a genuine issue of material fact regarding whether the defendants acted with "actual malice." Jones appealed that portion of the order finding that he is an involuntary limited-purpose public figure, and the defendants cross-appealed the finding that a fact issue exists as to malice. For the reasons that follow, we affirm the trial court's order finding that Jones was an involuntary limited-purpose public figure, and reverse the finding that a jury question exists as to malice.

Jones worked for the City of Blakely for 25 years as the full-time city clerk and treasurer, having been appointed by the mayor and city council. Blakely is a small community that had a population of 5,880 residents in 2002 during his tenure with the city. Jones was responsible for the city bank accounts, wrote checks, handled payroll and purchasing, prepared the city budget and agenda for city council

---

[31] See *Davis*, supra.
[32] See *Schofield v. Holsey*, 281 Ga. 809, 816 (II) (642 SE2d 56) (2007).

meetings, performed public relations activities, dealt with the public, and supervised the city's four administrative staffers. He also performed the duties of a city administrator from time to time in the absence of an official city administrator when the mayor and council directed him to do so, supervising the city's department heads. The city administrator is the top-ranking nonelected position in the Blakely city government, just above the city clerk, and Jones served as the administrator from 1980 to 1983, 1988 to 1990, and 1996 to 2002.

Jones retired in December 2002, and in June 2003 he was indicted in Early County for two counts of "making [a] false statement in a matter within the jurisdiction of city government" and four counts of theft by taking. The indictment charged that in October 1998, while working as the city clerk, Jones made a false statement when he wrote a memo directing the city payroll clerk to add 120 hours of vacation time to his account. Three theft by taking counts charged that Jones then sold the unauthorized vacation time to the city for $932.80 on October 15, 22, and 29, 1998. A second false statement count charged him with writing a memo in October 1999 directing the city payroll clerk to add 100 vacation hours to his account, and a fourth theft by taking count charged him with selling unauthorized vacation time to the city for $979.44 in November 1999.

Jones entered into a negotiated plea, and the court allowed him to plead nolo contendere to misdemeanor theft by taking as a first offender. He was sentenced to 12 months probation, suspended upon payment in full of $4,757.28 restitution, $500 fine, $100 court costs, and $85 in surcharges. Jones was also granted immunity for his testimony on the State's behalf at the trial of Al Hutchins, a city councilman facing criminal charges. The front page of Jones's indictment indicated that he pled nolo to Count 2, theft by taking, and underneath is written "misd.," which is the only place on the indictment which reveals he pled to a misdemeanor rather than a felony.

Jones testified for the prosecution at Hutchins's trial on December 9 and 10, 2003. According to newspaper articles about the incident, Hutchins was accused of obtaining insurance coverage from city medical plans to which he was not entitled. Journalist Russell, then 24, was present during part of the trial and after Jones testified, Russell examined the docket book listing Jones's charges and plea in the clerk's office. The jury began deliberating but Russell left before the jury returned its verdict to begin writing his article so he could meet the deadline for the next day's paper. A contact called Russell later that evening to report that the jury had acquitted Hutchins.

The headline for Russell's December 11, 2003 story was "Blakely Councilman Acquitted," and the subheading was, "A former city clerk who is now a convicted felon testifies in defense of City Councilman

Al Hutchins." The body of the article, published on the first page of the "Local & State" section of the paper, identified Jones as the "convicted felon," and stated that Jones had pled guilty to "one felony count of theft by taking for taking more than $4,700 from the city." Russell wrote that Jones "repaid the stolen money to the city," and later referred to him again as "the convicted city clerk." After the story ran in the paper, two people called Russell complaining that the statements about Jones were not true. Russell reviewed his notes and realized that the notes reflected that Jones pled nolo, but he incorrectly typed in the story that Jones pled guilty. In addition, he had assumed that the offense was a felony because the restitution exceeded $500. Russell and his editor drafted the following correction, which appeared on the front page of the next day's paper:

### CORRECTION

A story on Page 1D of Thursday editions stated incorrectly that former Blakely City Clerk Sterling Jones pleaded guilty to a felony count of theft by taking. Although charged with two felony counts of lying about city business and five felony counts of theft by taking, Jones ultimately pleaded "no contest" to one misdemeanor count of theft. His 12-month jail sentence was suspended when he repaid more than $4,700 he stole from the city.

This correction clarified that Jones pled nolo to one misdemeanor count of theft, but also stated that Jones's 12-month *jail* sentence was suspended when he repaid money he *stole* from the city, when the fact is that Jones's 12-month *probation* sentence was suspended when he paid $4,757.28 in "restitution," with no explanation of what the restitution was for.

On December 18, 2003, Jones's attorney delivered a letter to The Herald demanding retractions and corrections for the article and that part of the correction stating that Jones repaid $4,700 he "stole" from the city. In response to the demand, The Herald published this correction within a week, on December 25, 2003, on both the front page and the editorial page:

### CORRECTION

Former Blakely City Clerk Sterling Jones pleaded "no contest" to one misdemeanor count of theft and was ordered to pay $4,757.28 in restitution and pay a $500 fine. An Albany Herald article on Page 1D on Dec. 11 incorrectly stated he

pleaded guilty and a subsequent correction on Page 1A on Dec. 12 incorrectly characterized the restitution.

Jones does not contend that this correction was factually inaccurate or that it incorrectly stated the terms of his plea agreement.

Jones alleged in his complaint that the errors in the original article, its sub-heading, and the first correction were false, defamatory, and malicious; injured him in his professions as a licensed minister and public accountant (although he withdrew his claim for lost wages or income rather than produce his tax returns and other financial information during discovery); and exposed him to public contempt and ridicule. He also alleged that Russell wrote the statements with full knowledge that they were not true and with the specific intent to cause harm; that in addition to libel The Herald was responsible under both respondeat superior and failure to supervise and verify Russell's work; and that the defendants failed to comply with the requirements of OCGA § 51-5-11 regarding retractions.

In ruling on the defendants' motion for summary judgment, the trial court held that Jones was an involuntary limited-purpose public figure, and thus, to recover he had to prove "by clear and convincing evidence that Defendants acted with malice, i.e. published false and defamatory statements knowing that they were false or acting in reckless disregard for their truth or falsity." The court further held that a factual question existed as to whether Russell or The Herald "acted with malice, as that term is defined in law." In Case No. A07A2042, Jones appeals the finding that he is a limited-purpose public figure, and in Case No. A07A2043, the defendants appeal the denial of their motion for summary judgment "concerning whether the Appellants acted with malice in publishing the at-issue articles."

We review the trial court's grant of summary judgment de novo to determine whether the evidence, viewed in the light most favorable to the respondent, demonstrates a genuine issue of material fact for a jury to consider. "Summary judgment is proper only when no issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Ford v. Bank of America Corp.*, 277 Ga. App. 708 (627 SE2d 376) (2006).

## Case No. A07A2042

1. "A libel is a false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule." OCGA § 51-5-1 (a). While libel was a strict liability tort in common law, the United States Supreme Court in 1964 held that, to recover for libel, an action brought by a public official against critics

of his official conduct must prove that the publisher acted with actual malice, "that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U. S. 254, 280 (84 SC 710, 11 LE2d 686) (1964). That standard applies to public figures as well as public officials. Ten years later, that court held that, in an action brought by a private individual against the publisher of injurious "defamatory falsehood," states may define an appropriate standard of liability, thus balancing an individual's right to compensation for wrongful injury to reputation against the press's First Amendment rights. *Gertz v. Robert Welch, Inc.*, 418 U. S. 323, 346-348 (94 SC 2997, 41 LE2d 789) (1974). In Georgia, the standard of liability a private citizen must establish is negligence. *Triangle Publications v. Chumley*, 253 Ga. 179, 181 (1) (317 SE2d 534) (1984).

Jones contends that the trial court erred in finding that he was an involuntary limited-purpose public figure who must establish proof of actual malice with clear and convincing evidence, rather than a private figure who need only show negligence. "Whether a person is a public figure is a question of law that requires the court to review the nature and extent of the individual's participation in the specific controversy that gave rise to the defamation." *Mathis v. Cannon*, 276 Ga. 16, 22 (3) (573 SE2d 376) (2002). Using a three-part analysis, the court must: (1) define the public controversy; (2) examine the plaintiff's involvement in the controversy; and (3) determine whether the alleged defamation related to the plaintiff's participation in the controversy. *Atlanta Journal-Constitution v. Jewell*, 251 Ga. App. 808, 817 (3) (555 SE2d 175) (2001).

(a) A public controversy affects "the general public or some segment of it in an appreciable way, and the ramifications of the dispute would be felt by persons who were not direct participants in the public discussion." *Atlanta Journal-Constitution v. Jewell*, supra, 251 Ga. App. at 817 (3) (a). In this case, the public controversy involved the investigation and indictments concerning Jones's actions during his employment as the Blakely city clerk, council member Hutchins's criminal trial, Jones's plea agreement giving him immunity for his testimony as a state's witness at Hutchins's trial, and the outcome of Hutchins's trial. Jones held a top position in the city government of Blakely with direct control over the city's funds. The crimes for which he was indicted — abusing his position for personal financial gain — affected all citizens of Blakely, not just the participants in the controversy. Numerous media outlets were interested in the investigation, indictment, plea and trial of these public officials who were accused of misusing public funds, including newspapers and television stations from Alabama. The publisher of the Early County News, who had been a Blakely resident for 55 years as

well as its former mayor and a city councilman, said that Jones's indictment was "a major news story," "one of the biggest local news stories" that he had ever covered.

"The outcome of that dispute would affect the general public or some segment of it in an appreciable way, and the ramifications of the dispute would be felt by persons who were not direct participants." *Atlanta Journal-Constitution v. Jewell*, supra, 251 Ga. App. at 817 (3) (a). Accordingly, the controversy in this case, involving the alleged theft of city money by a high-ranking official with direct control over the city's funds, constituted an issue of public concern. See *Mathis v. Cannon*, supra, 276 Ga. at 23.

(b) Next we must consider the extent of Jones's involvement in the issue. A plaintiff in a libel case is a public figure if he purposefully tries to influence the outcome of a public controversy or, because of his position in the controversy, could realistically be expected to affect its resolution. *Atlanta Journal-Constitution v. Jewell*, supra, 251 Ga. App. at 817. An individual may be "drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues. . . . [S]uch persons assume special prominence in the resolution of public questions." *Gertz v. Robert Welch, Inc.*, supra, 418 U. S. at 351. While a tangential involvement is insufficient, Jones's involvement was not tangential but pivotal. He was the subject of a five-count felony indictment, and in resolving those charges he agreed to testify for the State after he was allowed to plead nolo contendere to one charge, reduced from a felony to a misdemeanor. Thus he was sufficiently "involved" in the public controversy.

(c) Finally, the alleged defamation directly related to Jones's participation in the controversy. "[A] publication is germane to a plaintiff's participation in a controversy if it might help the public decide how much credence should be given to the plaintiff." (Footnote omitted.) *Atlanta Journal-Constitution v. Jewell*, supra, 251 Ga. App. at 820 (3) (c). All of the errors in the newspaper headlines, article, and correction involved the specifics of Jones's plea agreement in the context of Jones's role as a witness in Hutchins's criminal trial. Accordingly, the trial court did not err in concluding that Jones is a limited-purpose public figure who must show malice or reckless disregard for the truth to recover damages for libel.

### Case No. A07A2043

2. Given that Jones is a limited-purpose public figure, he must prove both that the writing was false and that it was made with *actual malice,* that is, it was made knowing it was false or in reckless disregard of whether it was false. *Williams v. Trust Co. of Ga.*, 140 Ga. App. 49, 50 (230 SE2d 45) (1976). The standard of proof required to

show "actual malice" with regard to a public figure is high. We may not presume knowledge of falsity or reckless disregard for the truth, and it cannot be "derived solely from the language of the publication itself. Reckless disregard requires clear and convincing proof that a defendant was aware of the likelihood he was circulating false information." (Punctuation omitted.) *Sparks v. Peaster*, 260 Ga. App. 232, 237-238 (2) (581 SE2d 579) (2003). The evidence must focus not on what a reasonably prudent man would have done or whether a reasonably prudent man would have investigated further, but instead must establish "in a clear and convincing manner that a defendant in fact entertained serious doubts as to the truth of his statements." (Punctuation omitted.) Id. The actual malice inquiry is based on what the writer knew when he wrote it, *Bose Corp. v. Consumers Union &c.*, 466 U. S. 485, 511 (104 SC 1949, 80 LE2d 502) (1984), and the claimant must show that the writer had a "subjective awareness of probable falsity" when the material was published. (Punctuation omitted.) *Bollea v. World Championship Wrestling*, 271 Ga. App. 555, 559 (1) (610 SE2d 92) (2005).

The issue in this case, then, is whether Jones has produced sufficient evidence that the defendants were aware they were circulating false information or seriously doubted the truth of their statements. Jones argues that he has presented an issue of fact about malice by showing that Russell argued during three phone calls with two relatives who called him the day the story ran and insisted he had gotten the story correct. One relative asserts that Russell initially said, "I printed what the court records say. I was at the trial anyway and I heard what was said," but according to Jones's appellate brief his plea and sentence were never mentioned in the Hutchins trial. Russell said to another relative later the same day that he believed that Jones was a convicted felon, that he obtained his information from the Early County clerk of courts, and that he was just "reporting the news." When explaining why he thought Russell had not made a simple mistake but had deliberately erred in the first story, Jones said only that he had "a gut feeling."

Russell explained that after talking to Jones's relatives he looked at his handwritten notes and realized Jones had pled nolo, not guilty, and that when he wrote the story "it got transposed" in his brain. He repeated several times in his deposition that he got mixed up and wrote the wrong thing in the article. He initially defended the article to the relatives because he thought he had gotten it right, and he thought it was a felony charge because the amount of the restitution exceeded $500, and a theft valued at $500 or more constitutes a felony under the statute.

To establish that a writer acted with malice, the "evidence must show in a clear and convincing manner that a defendant in fact

entertained serious doubts as to the truth of his statements." (Punctuation omitted.) *Atlanta Humane Society v. Mills*, 274 Ga. App. 159, 165 (3) (618 SE2d 18) (2005). Mere failure to investigate "does not evince actionable reckless disregard. The defendant must have made the false publication with a high degree of awareness of probable falsity or must have entertained serious doubts as to the truth of his publication." (Citations and punctuation omitted.) *Brewer v. Rogers*, 211 Ga. App. 343, 348 (439 SE2d 77) (1993). Jones has introduced no evidence that Russell acted with a high degree of awareness of probable falsity or that he entertained serious doubts about his work. An examination of the indictment itself, which charged Jones with several felony counts, reveals that the only indication Jones was allowed to plead to a lesser charge is the small handwritten note "misd." on the first page of the indictment, next to one of the charges. While Jones testified that he did not steal the money but decided that if they wanted it back that badly he would give it back, Russell's conclusion that Jones paid restitution to replace money he stole does not show malice, but is a reasonable inference drawn from the indictment to which he pled, which charged him with five counts of theft by taking under OCGA § 16-8-2.

The evidence further does not demonstrate malice by The Albany Herald in publishing the stories or various retractions. While Jones contends that The Herald exhibited malice in leaving online an uncorrected version of the article for seven months, the evidence shows that the online version remained uncorrected not because the paper intended to do so but because of administrative oversight. The paper's web site was published under the direction of the advertising department, not the news department. The paper itself was not published online; instead, the news department selected which stories would be placed online each day. An "advertorial" writer was responsible for updating the web site, and copied and pasted the chosen stories into the web site. When the article about Jones ran, the news department did not follow up with the advertising department to ensure that changes were made to the online stories, although they do so now. This evidence does not demonstrate malice, only neglect.

As a limited-purpose public figure, Jones has failed to demonstrate actual malice on the part of Russell or The Albany Herald. We therefore reverse the judgment of the trial court denying summary judgment to the defendants.

*Judgment affirmed in Case No. A07A2042. Judgment reversed in Case No. A07A2043. Smith, P. J., and Miller, J., concur.*

DECIDED MARCH 7, 2008 — 

*Leisa G. Terry*, for appellant.

*Langley & Lee, Carl R. Langley, Joseph P. Durham, Jr.,* for appellees.

*Hull, Towill, Norman, Barrett & Salley, David E. Hudson,* amicus curiae.