**FIRST DIVISION**
**BARNES, P. J.,**
**LAND, J., and SENIOR JUDGE FULLER**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 7, 2024**

# In the Court of Appeals of Georgia

A23A1234. WEAVER v. MILLSAPS.

FULLER, Senior Judge.

After Michael Weaver and others acting at his behest posted negative Google reviews of Valerie Millsaps's frame shop business, she published a response, calling Weaver a Neo-Nazi and known felon who was targeting her business and had "threatened to kill other shop members." Weaver filed this libel action against Millsaps, who moved to dismiss the complaint under Georgia's anti-SLAPP statute. The trial court granted the motion, finding that Millsaps's statements were protected speech and that Weaver had failed to show a likelihood of prevailing on his claim. Weaver appeals these rulings, but we find no error and affirm.

"A 'SLAPP,' or 'Strategic Lawsuit Against Public Participation,' is a meritless lawsuit brought not to vindicate legally cognizable rights, but instead to deter or punish the exercise of constitutional rights of petition and free speech by tying up its target's resources and driving up the costs of litigation." *Johnson v. Cordtz*, 366 Ga. App. 87, 87 (878 SE2d 603) (2022) (citation and punctuation omitted). Georgia's anti-SLAPP statute, OCGA § 9-11-11.1, allows a defendant to move to strike or dismiss such a frivolous action "as an avenue for ending the suit quickly, summarily, and at minimal expense." Id. We review de novo a trial court's ruling on an anti-SLAPP motion, considering the pleadings and affidavits submitted by the parties in the light most favorable to the nonmoving party. Id. See also *Barnwell v. Trivedi*, 366 Ga. App. 168, 170 (881 SE2d 16) (2022).

So viewed, the record shows that Millsaps and her husband own a framing shop in Cartersville. One day in June 2022 while Millsaps was driving her company van, she saw Weaver standing on the street holding a sign that appeared to be antisemitic. Millsaps "displayed [her] middle finger" at Weaver. Weaver, having seen the business logo on the van, published a post on his personal blog asking his followers to leave negative Google reviews of the business. Within 12 hours, multiple negative

reviews appeared on the business's Google review page. Weaver subsequently thanked his supporters who had left the reviews and stated, "I'm just getting warmed up! . . . Total f__king war!"

In response, Millsaps posted her own comment on her business's Google review page:

> My business is being targeted by a Neo Nazi and a member of the KKK. Please disregard the reviews. None of those profiles have ever entered my shop. I am being harassed and bullied by Michael [Weaver]. A known felon of hate crimes. He has targeted many businesses in our town. I refuse to be intimidated by him and his hate literature that he has left at my shop and my home. He has threatened to kill other shop members and flooded their Google reviews with harassing, untrue reviews. You can decide to try my shop and let my experience speak. Please note all date stamps are in a concentrated period of time. I choose LOVE over HATE. Thank you kindly.

According to Millsaps, the frame shop's Google rating plummeted due to negative reviews left by Weaver and his followers, and the shop's business declined.

Weaver sued Millsaps for libel, alleging that she had made knowingly false statements about his criminal record, his affiliation with the KKK, and his "terroristic threats to her customers." Millsaps moved to dismiss the complaint under the anti-

SLAPP statute, arguing among other things that her statements were truthful protected speech made without actual malice.

In support of the motion, Millsaps presented her own affidavit, along with a verified answer and counterclaim, stating that Weaver is a member of the Neo-Nazi National Alliance, which advocates "new societies throughout the White world which are based on Aryan values and are compatible with the Aryan nature[,]" and World Church of the Creator, whose founder calls for "total war against the Jews and the rest of the goddamned mud races of the world[.]" Additionally, Weaver co-founded a Cartersville-based white supremacist group working to make America a "Eurocentric Christian Nation." Millsaps presented evidence that Weaver advertises these affiliations to news reporters and on social media and his personal blog.

Millsaps averred that, before her personal encounter with Weaver, she was familiar with him, his white supremacist affiliations, and his distribution of antisemitic literature around Cartersville. She knew that Weaver "had a history of violent behavior," including a prior aggravated assault conviction for pepper-spraying an African American man he encountered on the street.[1] Millsaps also had heard that

---

[1] See generally *Weaver v. State*, 325 Ga. App. 51 (752 SE2d 128) (2013) (affirming trial court's denial of Weaver's motion to withdraw his guilty plea).

Weaver had targeted other Cartersville businesses, including a gym that had kicked him out for posting antisemitic flyers inside. According to Millsaps's verified answer, Weaver and his associates left thousands of negative Google reviews for the gym, vandalized the premises, and made repeated harassing phone calls, including one in which the caller threatened to kill the gym owner, prompting the owner to call the police.

Weaver submitted a verified response to Millsaps's filings, conceding that he had engaged in "review bombing" on her business's Google page, but denying that he had personally threatened to kill anyone, that he was a member of the KKK, or that he had been convicted of a hate crime. Following a hearing, the trial court granted Millsaps's motion to dismiss, ruling that her post was protected speech under the anti-SLAPP statute because it addressed an issue of public concern. The court also ruled that Weaver was unlikely to prevail on his claim because Millsaps's statements were

---

Millsaps also pointed to news articles showing that, on another occasion, Weaver got into a "loud verbal dispute" with a man who was removing his flyers and followed the man with a taser; and that Weaver was given a criminal trespass warning after a Cartersville business owner complained about him placing flyers on cars in the parking lot.

substantially true and she did not act with actual malice. Finally, the court awarded attorney fees to Millsaps. Weaver appeals.

1. Weaver argues that the trial court erred by determining that Millsaps's post was protected speech. We disagree.

In analyzing an anti-SLAPP motion to dismiss, the trial court first decides whether the moving party "has made a threshold showing that the challenged claim is one arising from protected activity." *Wilkes & McHugh, P. A. v. LTC Consulting*, 306 Ga. 252, 262 (2) (b) (830 SE2d 119) (2019) (citation and punctuation omitted). The moving party meets this burden by "demonstrating that the act underlying the challenged claim could reasonably be construed as fitting within one of the categories spelled out in [OCGA § 9-11-11.1 (c) (1)-(4)]." Id. (citation and punctuation omitted). If the moving party makes a threshold showing of protected activity, then the court proceeds to the second step of the analysis and determines whether the plaintiff has established a reasonable probability that he will prevail on the merits of his claim. Id. "A claim that satisfies both prongs of the anti-SLAPP statute is subject to being stricken." *Joshua David Mellberg, LLC v. Impact Partnership*, 355 Ga. App. 691, 693 (844 SE2d 223) (2020).

In the trial court, Millsaps argued that her post was protected speech because it fell within OCGA § 9-11-11.1 (c) (3), which covers "[a]ny written or oral statement . . . made in a place open to the public or a public forum in connection with an issue of public interest or concern." Weaver concedes on appeal that he is "a public figure," and it is undisputed that Millsaps's challenged comments were made in response to a "war" that Weaver initiated on a public forum. See *Lane Dermatology v. Smith*, 360 Ga. App. 370, 378-379 (2) (861 SE2d 196) (2021) (in determining whether a matter is of public concern, courts consider "whether the subject of the speech or activity was a person or entity in the public eye . . .; and whether the activity occurred in the context of an ongoing controversy, dispute or discussion . . .") (citation and punctuation omitted). Thus, Millsaps carried her burden of showing that her post "could reasonably be construed as fitting within" OCGA § 9-11-11.1 (c) (3), and the trial court did not err by concluding that it was protected speech under the anti-SLAPP statute.

2. Weaver also contends that the trial court erred by finding no reasonable probability that he would prevail on his claim. Again, we disagree.

7

To meet his burden of showing a probability that he would prevail on the merits, Weaver needed to "demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Wilkes & McHugh*, 306 Ga. at 262 (2) (b) (citation and punctuation omitted). "A libel is a false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule." OCGA § 51-5-1 (a). To prevail on a libel claim, a plaintiff who is a public figure must prove by clear and convincing evidence that the defendant acted with actual malice; that is, that the defendant "knew that the allegedly defamatory statements were false or made the statements with reckless disregard of whether they were false or not." *American Civil Liberties Union v. Zeh*, 312 Ga. 647, 651-652 (2) (b) (864 SE2d 422) (2021). See also *Cottrell v. Smith*, 299 Ga. 517, 523-526 (II) (A) (788 SE2d 772) (2016). "The actual malice inquiry is based on what the writer knew when he wrote it, and the claimant must show that the writer had a subjective awareness of probable falsity when the material was published." *Jones v. Albany*

8

*Herald* , 290 Ga. App. 126, 132 (2) (c) (658 SE2d 876) (2008) (citations and punctuation omitted).

Although Weaver challenged multiple portions of Millsaps's post in the trial court, on appeal he focuses only on her statement that he "threatened to kill other shop members." Weaver asserts that this statement is false because he never threatened to kill anyone, let alone multiple people. In determining whether Millsaps acted with actual malice, however, the question is not whether Weaver actually made the threat, but whether Millsaps knew when she made her post that he had not made — or probably had not made — the threat. See *Jones*, 290 Ga. App. at 132 (2) (c).

Millsaps averred that she made her Google post to protect her business and believed the information in the post was true. As noted, Millsaps knew about Weaver's membership in organizations advocating race wars and his history of violent criminal behavior. Millsaps also had heard that Weaver had threatened to kill a local gym owner after the owner kicked Weaver out of the gym. Although Weaver denies personally making any such threat, he has not denied instigating a campaign of harassment against the gym that included negative reviews, vandalism, and repeated

phone calls, and he has not shown that no death threat occurred.[2] Accordingly, there

is no evidence that Millsaps knew her statement about the death threat was false or

probably false.

Weaver also argues that Millsaps acted recklessly because her statement "says

'shopmembers.' Plural. And does not specify who was threatened, but rather . . .

allows the reader to come to different conclusions as to who was threatened, and how

many people." But "defamation law overlooks minor inaccuracies and concentrates

upon substantial truth." *Bryant v. Cox Enterprises*, 311 Ga. App. 230, 234 (III) (715

SE2d 458) (2011) (citation and punctuation omitted). See also *Swindall v. Cox*

*Enterprises*, 253 Ga. App. 235, 236 (558 SE2d 788) (2002) ("[m]inor factual errors

which do not go to the substance, the gist, the sting of a story" are not actionable)

(citation and punctuation omitted). Further, "rhetorical hyperbole . . . cannot form

---

[2] In seeking to prove that Millsaps's claim of a death threat was false, Weaver notes that his attorney read aloud at the trial court hearing from a purported police report mentioning that the gym owner had received harassing phone calls, but not specifically noting any death threats. But this report was not admitted into evidence below, is not part of the record, and cannot be considered on appeal. See *Baker v. Simon Property Group*, 273 Ga. App. 406, 407 (1) (614 SE2d 793) (2005) (refusing to consider for summary judgment purposes police reports that were not certified or authenticated). In any event, the quoted language shows only what one officer noted on one occasion; it does not establish that the gym owner never received a death threat, much less that Millsaps knew there was no threat.

the basis of a defamation claim." *Lucas v. Cranshaw*, 289 Ga. App. 510, 514 (1) (659 SE2d 612) (2008) (citation and punctuation omitted). Here, Millsaps's use of the plural may have been factually inaccurate, in that she presented evidence only of one death threat. But this inaccuracy, or hyperbole, does not go to the substance of her comments and does not prove actual malice. Because there was no evidence — much less clear and convincing evidence — that Millsaps knew her statement was false, or acted in reckless disregard of its truth or falsity, the trial court did not err by concluding that Weaver likely would not prevail on his claim.[3] It follows that the court did not err by granting Millsaps's motion to dismiss.

*Judgment affirmed. Barnes, P. J., and Land, J., concur.*

---

[3] In light of this conclusion, we do not address the trial court's other basis for concluding that Weaver would not prevail — that Millsaps's statements were true.