A99A0102. JAILLETT v. GEORGIA TELEVISION COMPANY.
(520 SE2d 721)

RUFFIN, Judge.

Richard Jaillett d/b/a Ace & A Heating and Air Conditioning sued Georgia Television Company d/b/a WSB-TV (WSB), alleging that WSB made false and defamatory statements about Jaillett's air conditioning business during a television newscast. The trial court

granted WSB's motion for summary judgment, and Jaillett appeals. We affirm.[1]

In moving for summary judgment,

> a defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case, but may point out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support any essential element of the nonmoving party's case. The nonmoving party cannot then rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

*Stange v. Cox Enterprises*, 211 Ga. App. 731, 732 (1) (440 SE2d 503) (1994).

In the summer of 1993, David and Harriet Dillard called Ace & A after their air conditioner broke down. Rodney McKay, an Ace & A repairman, came to their house and, after inspecting the unit, told Mrs. Dillard that the fan was not working. After further inspecting the compressor, McKay told Mrs. Dillard that the entire air conditioning unit needed to be replaced, and that she would be wasting her money just to replace the fan. He gave her a written quote of $285 to replace the fan motor alone (less the $32.95 paid for the service call), and a separate quote of $1,225 to replace the entire unit. Mr. Dillard arranged for another company, Ace Fireplace, to provide a second opinion. The Ace Fireplace repairman determined that the unit's quick start capacitor had burned out and that several wires to the fan motor had burned. He successfully repaired the unit for $113.90 by replacing the capacitor and rewiring the burned wires. The air conditioner was still working properly two years later.

After unsuccessfully trying to obtain a refund of the service call charge from Ace & A, Mr. Dillard sent copies of his correspondence with Ace & A to the Better Business Bureau and to WSB's consumer affairs department. WSB's consumer action reporter, Patrick Crosby, contacted the Dillards to see if he could interview them for a consumer affairs report on air conditioning repairs. Crosby conducted

---

[1] We note that Jaillett's appellate brief fails to comply with this Court's rules, in that the statement of facts section does not provide record citations supporting relevant facts, and in that the argument section does not track the issues raised in his enumerations. Moreover, Jaillett did not file separate enumerations until after his brief was filed. Nevertheless, WSB's motion to dismiss this appeal for failure to timely file separate enumerations of error is denied, and we shall address the issues raised in Jaillett's enumerations to the extent that they are supported in his brief. See *Val Preda Motors v. Nat. Uniform Svc.*, 195 Ga. App. 443, 444 (393 SE2d 728) (1990).

on-camera interviews with both Mrs. Dillard and Jaillett for use in the report.

The broadcast in question aired in July 1993. Anchorman Don Farmer introduced the segment by stating that "[o]ur consumer reporter Patrick Crosby says the quick fix can be a quick ripoff." Crosby, sitting at the anchor desk, replied,

> No doubt about it, Don. You probably can't get extremely quick service today. Many air conditioning specialists, as you would imagine are overwhelmed with calls, from desperate, and already testy customers. See this little coil, it blew out in a central air unit at the Dillards['] house in Peachtree Corners. Should they have had to pay over twelve hundred dollars for a whole new unit? I don't think so.

WSB then played a taped report, as follows:

> Patrick Crosby: The house was roasting for David and Harriett Dillard in Peachtree Corners. The contractor's man from Ace & A Air Conditioning had said that it was bad news, they needed a whole new unit . . . about twelve hundred dollars. A second opinion confirmed that was not correct.

> Harriett Dillard: He said it was obvious the fan's not working and then he said we need to check and see if your compressor's okay and he brings the hose out and sprays it, and at that time, I was thinking this guy's probably taking me as an idiot.

> Richard Jaillett: I think it's just a man working 14-16 hours a day made an honest mistake, and he got his money back.

> Harriett Dillard: I say get a second estimate which is what we did and found out we were getting ripped off.

> Patrick Crosby: So what do you do when the air just goes?

The taped report then cut to the offices of another air conditioning company, Estes Heating & Air:

> Patrick Crosby: The first thing everybody's doing is calling. Here at Estes, 200 calls a day for 28 service vehicles. Estes and others are simply so busy right now, it's going to take a few days just to get to you.

> Tommy Estes: There are an awful lot of one man operators around and they tend to promise you the world and not be able to perform.

Patrick Crosby: But since most people don't know the compressor and other workings of a central air unit, reputable dealers say there are some things you can check on your own, before you call.

The segment then concluded with Estes and Crosby advising consumers with air conditioning problems to check their air filters, make sure that their units are actually turned on, and check to see if a circuit breaker is off.

We have previously held that

[d]efamation via a radio or television broadcast (or a "defamacast," as it has become generally known) includes elements of both libel under OCGA § 51-5-1, and slander under OCGA § 51-5-4. Libel is a "false and malicious defamation of another . . . tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule." OCGA § 51-5-1. According to OCGA § 51-5-4 (a) (3), slander or oral defamation includes, inter alia, "[m]aking charges against another in reference to his trade, office or profession, calculated to injure him therein."

(Citations omitted.) *Strange v. Henderson*, 223 Ga. App. 218, 219 (477 SE2d 330) (1996). "To be actionable, a communication must be both false and malicious," *Speedway Grading Corp. v. Gardner*, 206 Ga. App. 439, 441 (425 SE2d 676) (1992), and the burden of proving a statement's falsity is on the plaintiff. See *Cox Enterprises v. Thrasher*, 264 Ga. 235, 236 (1) (442 SE2d 740) (1994); *Blomberg v. Cox Enterprises*, 228 Ga. App. 178, 179 (1) (491 SE2d 430) (1997). In determining whether a statement is false,

[d]efamation law overlooks minor inaccuracies and concentrates upon substantial truth. . . . [A] statement is not considered false unless it would have a different effect on the mind of the viewer from that which the pleaded truth would have produced.

(Citation and punctuation omitted.) *Brewer v. Rogers*, 211 Ga. App. 343, 347 (2) (a) (439 SE2d 77) (1993). "[M]inor factual errors which do not go to the substance, the gist, the sting of [a] story" do not render a communication false for defamation purposes. (Punctuation omitted.) *Stange*, supra at 735.

Jaillett contends that the broadcast was false and defamatory in three ways. First, he contends that the broadcast falsely represented that Ace & A told Mrs. Dillard she had to have a new unit. Second, he contends that the report falsely described Ace & A as a "one man"

operation. Third, he contends that the broadcast was defamatory because Farmer and Mrs. Dillard used the term "rip off."

With respect to the first of these contentions, Jaillett points to the fact that the broadcast failed to mention that the Ace & A repairman, McKay, gave Mrs. Dillard a separate quote for replacing the fan motor, in addition to the quote for replacing the entire unit. However, this fact does not alter the truth of the gist of the story — i.e., that McKay incorrectly told Mrs. Dillard the entire unit needed to be replaced. Although McKay gave Mrs. Dillard a quote for replacing the fan motor, the evidence is uncontradicted that he told Mrs. Dillard the entire unit needed to be replaced and she would be wasting her money by fixing only the fan motor.[2] It is also undisputed that the unit was in fact repaired for substantially less cost by another company, without having to replace the entire unit or the fan motor. Although the broadcast may not have told the "whole truth," the failure to mention the quote for replacing the fan motor alone did not render the broadcast substantially false. See *Jim Walter Homes v. Strickland*, 185 Ga. App. 306, 309 (1) (363 SE2d 834) (1987) (" 'an omission of information from a statement admittedly published will not support an action for libel' "). "As long as facts are not misstated, distorted or arranged so as to convey a false and defamatory meaning, there is no liability for a somewhat less than complete report of the truth." (Punctuation omitted.) *Blomberg*, supra, 228 Ga. at 179 (1).

Jaillett also contends that the broadcast falsely characterized Ace & A as a "one man operation." Pretermitting whether such a characterization is defamatory, it is clear that the phrase was not directed at Jaillett or his business. The phrase was not used until after the segment dealing with Ace & A had concluded, when Crosby began discussing what people should do if they experience air conditioning problems. At that point, Tommy Estes stated that "[t]here are an awful lot of one man operators around and they tend to promise you the world and not be able to perform." There is no indication that Estes was referring to Jaillett or Ace & A. Indeed, as Jaillett points out in his brief, Crosby had referred earlier in the broadcast to "the contractor's man from Ace & A Air Conditioning," indicating that Ace & A was not a one man operation, and Jaillett himself was shown stating that his repairman had made a mistake. Moreover, Estes' statement that one man operators "tend to promise you the world and not be able to perform" does not correspond to the complaint

---

[2] Although Jaillett apparently took McKay's deposition, he did not file it with the trial court, despite WSB's request that he do so. In his appellate brief, Jaillett does not contest Mrs. Dillard's account of what McKay told her, but simply states that she did not have to buy a new unit because she was given two written estimates.

against Ace & A — i.e., that it failed to accurately diagnose the relatively simple problem with the Dillards' air conditioner. Thus, it is apparent that the reference to "one man operators," even if disparaging, was not a reference to Ace & A.

Finally, Jaillett contends that the broadcast was defamatory because both Farmer and Mrs. Dillard used the term "rip off," which he contends was disparaging. WSB contends that this term constitutes a mere statement of opinion or rhetorical hyperbole, and thus cannot form the basis of a defamation claim. We have previously held that

> [t]here is no "wholesale defamation exemption for anything that might be labeled 'opinion.' [To say otherwise would] ignore the fact that expressions of 'opinion' may often imply an assertion of objective fact." *Milkovich v. Lorain Journal Co.*, [497 U. S. 1] (110 SC 2695, 111 LE2d 1) [(1990)]. . . . The pivotal questions are whether [the challenged] statements can reasonably be interpreted as stating or implying defamatory facts about plaintiff and, if so, whether the defamatory assertions are capable of being proved false.

*Eidson v. Berry*, 202 Ga. App. 587-588 (415 SE2d 16) (1992).

The requirement that, to be actionable, a statement of opinion must imply an assertion of objective facts about the plaintiff

> unquestionably excludes from defamation liability not only statements of rhetorical hyperbole . . . but also statements clearly recognizable as pure opinion because their factual premises are revealed. . . . Both types of assertions have an identical impact on readers — neither reasonably appearing factual — and hence are protected equally under the principles espoused in *Milkovich*.

*Phantom Touring v. Affiliated Publications*, 953 F2d 724, 731, n. 13 (1st Cir. 1992). If an opinion is based upon facts already disclosed in the communication, the expression of the opinion implies nothing other than the speaker's subjective interpretation of the facts. Thus, the Restatement notes that "a statement of [opinion] is actionable only if it implies the allegation of *undisclosed* defamatory facts as the basis for the opinion." (Emphasis supplied.) Restatement (Second) of Torts, § 566, p. 170.

> If the defendant bases his expression of a derogatory opinion of the plaintiff on his own statement of facts that are not defamatory, he is not subject to liability for the factual statement — nor for the expression of opinion, so long as it does

not reasonably indicate an assertion of the existence of other, defamatory, facts that would justify the forming of the opinion.

Id. at p. 175, Comment c. See also *Nat. Assn. of Govt. Employees v. Central Broadcasting Corp.*, 379 Mass. 220, 227 (396 NE2d 996) (1979) ("[A] state of affairs in which opinion is recognizable as such because its factual ingredient is known or assumed, presents a clear case for full First Amendment protection including freedom from civil liability."); *Potomac Valve & Fitting v. Crawford Fitting Co.*, 829 F2d 1280, 1290 (4th Cir. 1987); *Dunlap v. Wayne*, 105 Wash.2d 529, 540 (716 P2d 842) (1986); *NBC Subsidiary v. The Living Will Center*, 879 P2d 6, 12 (Colo. 1994); *Hotchner v. Castillo-Puche*, 551 F2d 910, 913 (2nd Cir. 1977).

To say that a person has been "ripped off" could mean simply that the person has gotten a bad deal, or it could mean that he has been the victim of dishonest or shady practices by another. We do not doubt that, in certain contexts, use of the term "rip off" might imply that the speaker is aware of undisclosed facts showing that the plaintiff has acted dishonestly. In this case, however, nothing in the broadcast suggests to the viewer that either WSB or Mrs. Dillard was aware of any defamatory facts other than those disclosed in the broadcast — i.e., that the Ace & A repairman had incorrectly told Mrs. Dillard she needed to replace the air conditioning unit. There is no implication that either WSB or Mrs. Dillard was aware of any additional facts showing that Ace & A had intentionally misdiagnosed the problem with the air conditioner. Indeed, the only suggestion of a reason for the misdiagnosis was Jaillett's statement that the repairman "made an honest mistake" due to working long hours. Accordingly, a reasonable viewer would not have concluded that, by using the term "rip off," WSB and Mrs. Dillard were implying that they were aware of any additional defamatory facts not disclosed in the broadcast.

Because Jaillett failed to produce evidence creating a jury issue as to whether the broadcast was false and defamatory, the trial court did not err in granting WSB's motion for summary judgment on this claim.

Jaillett contends that, in addition to his defamation claim, he has an independent claim for invasion of privacy because of publicity casting his business in a false light. The tort of invasion of privacy was first recognized in *Pavesich v. New England Life Ins. Co.*, 122 Ga. 190 (50 SE 68) (1905), and is based upon the defendant's violation of the plaintiff's right "to be let alone." Id. at 197; *Brewer*, supra at 350 (3). However, *Pavesich* recognized that

[t]he right of privacy . . . like every other right that rests in the individual, may be waived by him . . . provided the effect of his waiver will not be such as to bring before the public those matters of a purely private nature which express law or public policy demands shall be kept private. . . . [A]ny person who engages in any pursuit or occupation or calling which calls for the approval or patronage of the public submits his private life to examination by those to whom he addresses his call, to any extent that may be necessary to determine whether it is wise and proper and expedient to accord to him the approval or patronage which he seeks.

*Pavesich*, supra at 199-200.

In this case, any publicity from WSB's broadcast related solely to the operation of Jaillett's business. Accordingly, the broadcast did not violate Jaillett's right to be let alone, and the trial court did not err in granting summary judgment on this claim. *S & W Seafoods Co. v. Jacor Broadcasting of Atlanta*, 194 Ga. App. 233, 237 (4) (390 SE2d 228) (1990).

*Judgment affirmed. McMurray, P. J., and Andrews, P. J., concur.*

DECIDED JULY 8, 1999 — CERT. APPLIED FOR.

*David S. Walker, Jr.*, for appellant.

*Dow, Lohnes & Albertson, James W. Kimmell, Jr., Peter C. Canfield, Sean R. Smith, Cynthia L. Counts*, for appellee.