A05A1759. AUSTIN v. PMG ACQUISITION, LLC et al.
(629 SE2d 417)

SMITH, Presiding Judge.

Gordon Austin appeals from the trial court's grant of summary judgment to PMG Acquisition, LLC d/b/a The Times-Georgian (the newspaper) and its news editor, Kathy Jeffcoats, on his claim for libel stemming from statements made in several articles printed by the

---

[2] See *Carter v. Early American Ins. Co. &c.*, 191 Ga. App. at 821.

newspaper.[1] The trial court granted the motion for summary judgment on the ground that the statements were either substantially true, nonactionable opinion, or protected as privileged under OCGA § 51-5-7. We agree and affirm.

To prevail at summary judgment, the moving party must show "that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991); see OCGA § 9-11-56 (c). "A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case." (Emphasis omitted.) *Lau's Corp.*, supra.

Viewing the evidence in the light most favorable to Austin, the record reveals that Austin's daughter was cited for underage drinking while at a local restaurant. The citation indicated that she had a blood alcohol content of 0.21. Austin, an oral surgeon on staff at Tanner Medical Center, took his daughter to the medical center for a separate blood alcohol test. Austin deposed that the testing machine printed out a result of 0.0 and that he tore the result from the machine, put it in his pocket, and then left with his daughter. The next morning, Austin left a phone message for the police captain and then prepared an e-mail message addressed to the captain detailing the previous night's events. As an attachment to the e-mail, Austin created a lab report on his computer to mirror the one he tore from the testing machine the night before indicating that his daughter's blood alcohol level was 0.0. Just prior to sending the e-mail, however, Austin received a phone call from the police captain and the two arranged a meeting. Austin met with the captain and provided him a copy of both the e-mail and the lab report he created on his computer.[2]

As part of its investigation of the incident, police executed a search warrant at the medical center where they obtained a lab report indicating that Austin's daughter had a blood alcohol content of 0.17 the night she was cited for underage drinking. Based upon this information and the documents Austin presented to the police captain, police arrested Austin and charged him with first degree forgery and making false statements.[3]

---

[1] Austin also sued the City of Carrollton and others for false arrest, libel, and slander.

[2] The record contains a lab report that Austin claims was the original he tore from the testing machine and a copy of that same report that was faxed to his home from the medical center. Austin admitted, however, that he never provided either of those documents to police.

[3] Austin subsequently pled guilty to obstruction of a law enforcement officer.

Between November 2001 and April 2003, the newspaper published six articles detailing the circumstances surrounding Austin's arrest. Austin takes issue with four statements in particular: (1) "Austin created a fake lab report that indicated his daughter . . . tested negative for blood alcohol content," (2) "A search warrant executed at Tanner Medical Center . . . uncovered [the] actual lab report showing [Austin's daughter] registered a blood alcohol content of .17 grams percent the night she was arrested," (3) "Austin was apparently trying to protect his daughter," and (4) "Austin was relieved of his duties as president of Carrollton Police Department's Crimestoppers the day he was arrested."[4]

OCGA § 51-5-2 (a) defines newspaper libel as "[a]ny false and malicious defamation of another in any newspaper . . . tending to injure the reputation of the person and expose him to public hatred, contempt, or ridicule." To be actionable "the statement must be both false and malicious, and the plaintiff has the burden of proving the statement's falsity." (Citation and footnote omitted.) *Swindall v. Cox Enterprises*, 253 Ga. App. 235, 236 (558 SE2d 788) (2002). "In determining whether a statement is false, defamation law overlooks minor inaccuracies and concentrates upon substantial truth. A statement is not considered false unless it would have a different effect on the mind of the viewer from that which the pleaded truth would have produced." (Citations and punctuation omitted.) *Jaillett v. Ga. Television Co.*, 238 Ga. App. 885, 888 (520 SE2d 721) (1999).

The first two statements — that Austin created a fake lab report and that the actual lab report showed a blood alcohol content of 0.17 — were attributed to police. The record shows that those statements accurately reflected the contents of both the incident report prepared by officers and Austin's arrest warrant. See OCGA § 51-5-7 (6) and (8) (fair and honest reports of court proceedings and truthful reports of information received from police are deemed privileged). The statements were therefore privileged communications and cannot be the basis for a libel action. Id.; compare *Heard v. Neighbor Newspapers*, 259 Ga. 458 (383 SE2d 553) (1989) (information from a welfare fraud investigator without arrest powers not privileged). In any case, Austin himself admitted that the lab report he gave to police was created on his home computer and was not the product of the medical center.

The third statement — that Austin was apparently trying to protect his daughter — was merely the opinion of the writer based

---

[4] We note that we agree with the trial court's conclusion that Austin is not a limited-purpose public figure since the alleged defamation was not germane to Austin's participation in the Carrollton Police Department's Crimestoppers. See *Atlanta Journal-Constitution v. Jewell*, 251 Ga. App. 808, 819-820 (3) (c) (555 SE2d 175) (2001).

upon the facts presented in the articles. "If an opinion is based upon facts already disclosed in the communication, the expression of the opinion implies nothing other than the speaker's subjective interpretation of the facts." *Jaillett*, supra, 238 Ga. App. at 890. We have previously held that "[a]n assertion that cannot be proved false cannot be held libelous. A writer cannot be sued for simply expressing his opinion of another person, however unreasonable the opinion or vituperous the expressing of it may be." (Citations and punctuation omitted.) *Atlanta Humane Society v. Mills*, 274 Ga. App. 159, 166 (3) (618 SE2d 18) (2005). Therefore, the writer's opinion based upon her interpretation of the facts cannot be held libelous here.

The fourth statement — that Austin was removed from his position as president of Carrollton Police Department's Crimestoppers the day he was arrested — although not entirely accurate, was substantially true. The evidence showed that Austin was removed from his position as president on November 19, 2001, not when he was arrested on November 12. Minor factual errors that do not go to the substance or gist of a story do not render a communication false for defamation purposes. *Jaillett*, supra, 238 Ga. App. at 888; see also *Stange v. Cox Enterprises*, 211 Ga. App. 731, 735 (2) (440 SE2d 503) (1994) (failure to explain that plaintiff was not a named defendant in separate civil suit and variance in number of persons who alleged they were deceived by plaintiff were minor errors).

Since Austin has failed to meet his burden of showing the falsity of the published articles, the trial court did not err in granting summary judgment to the newspaper and Jeffcoats.

*Judgment affirmed. Ellington and Adams, JJ., concur.*

DECIDED MARCH 7, 2006 —
RECONSIDERATION DENIED MARCH 30, 2006 —

*Smith, Gambrell & Russell, Matthew S. Coles, Aaron P. Tady*, for appellant.

*Mullins, Whalen & Westbury, Andrew J. Whalen III, Hull, Towill, Norman, Barrett & Salley, James B. Ellington*, for appellees.