A09A1329. COMMUNITY NEWSPAPER HOLDINGS, INC. et al.
v. KING.

(682 SE2d 346)

MIKELL, Judge.

We granted the application for interlocutory appeal filed by Community Newspaper Holdings, Inc. d/b/a The Union Recorder ("the newspaper") and reporter Hanna Marney (collectively, "appellants"), to review the trial court's order denying their motion for summary judgment in this libel action filed by Shirrod King. Because the evidence conclusively establishes that the articles published in the newspaper about King were privileged as "[t]ruthful reports of

information received from . . . police authorities,"[1] we reverse the trial court's judgment.

To prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, and that the undisputed facts warrant judgment as a matter of law.[2] "A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case."[3] We review a ruling on a motion for summary judgment de novo, viewing the evidence and all reasonable inferences that may be drawn from it in the light most favorable to the nonmovant.[4]

Viewed most favorably to King, the record demonstrates the following relevant facts. King was employed as a healthcare worker at Central State Hospital in Milledgeville. When two Baldwin County prisoners escaped from the hospital, King was suspected of aiding in the escape. Marney wrote two articles about King's alleged participation in the escape. The articles were published in the newspaper on December 22, 2006, and in the weekend edition of December 23-25. In the first article, titled "Escapees had inside help," Marney wrote that police had taken a warrant out on King, who was suspected of aiding in the prisoners' escape. Marney quoted Baldwin County Sheriff Bill Massee as saying that officers were "actively looking for King. . . . We consider his assistance to the escapees as a big or bigger crime than the escape itself." The second article was written by Marney after King had been taken into custody. In that article, titled "Escape accomplice arrested," Marney wrote that "deputies arrested . . . King . . . for aiding the escape of two Baldwin County prisoners"; that King had been charged with "aiding another to escape from . . . custody"; and that he "could face up to five years in prison if found guilty and convicted." Marney also quoted the sheriff as saying that King "allegedly gave [a] key" to one of the prisoners.

The charge against King was ultimately dismissed. King subsequently filed suit against Marney and the newspaper, alleging that the statements in the articles, as well as the headline of the second article, constituted libel per se. King sought damages for the libel, punitive damages, and damages for emotional distress he suffered from having been "falsely charged with criminal offenses." Appel-

---

[1] OCGA § 51-5-7 (8).

[2] *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

[3] (Emphasis omitted.) Id.

[4] See *Cox Enterprises v. Nix*, 274 Ga. 801, 804 (2) (560 SE2d 650) (2002).

lants moved for summary judgment. The trial court denied the motion but issued a certificate of immediate review. On interlocutory appeal, appellants contend that (1) the content of the articles is privileged, and (2) the headline of the second article, read in conjunction with the article, is not libelous.

1. Newspaper libel is "[a]ny false and malicious defamation of another in any newspaper, magazine, or periodical, tending to injure the reputation of the person and expose him to public hatred, contempt, or ridicule."[5] "[T]ruthful reports of information received from any arresting officer or police authorities" are conditionally privileged under OCGA § 51-5-7 (8).[6] To qualify as "truthful," a published article must be a "fair and honest report of information obtained from police records and police authorities."[7] In this regard, Marney's affidavit, tendered in support of appellants' summary judgment motion, reflects that the statements in both articles were derived from an interview with Sheriff Massee and a report issued by hospital police. Marney averred that she had no reason to doubt the accuracy of the information obtained from either source. The investigative report issued by the hospital police reveals that King had been identified as being the staff member who gave a pass key to one of the escaped inmates and that the investigator had been advised to press charges against King. The report stated that King was arrested on December 22 and that he denied giving a key to the inmate. In his deposition, King conceded that a warrant had been issued for his arrest for allegedly aiding the escapees, as reported in the first article. King also admitted that he was in fact arrested and had posted bond, as reported in the second article.

> Because falsity is an essential element of both libel and slander, truth is a perfect defense to a defamation action. Accordingly, where a publication is substantially accurate, and if the article is published by the newspaper in good faith and the same is substantially accurate, the newspaper has a complete defense. As long as facts are not misstated, distorted or arranged so as to convey a false and defamatory meaning, there is no liability for a somewhat less than complete report of the truth, even if the newspaper conveys its own editorial opinions.[8]

---

[5] OCGA § 51-5-2 (a). See *Austin v. PMG Acquisition*, 278 Ga. App. 539, 541 (629 SE2d 417) (2006).

[6] (Punctuation and footnote omitted.) *Torrance v. Morris Publishing Group*, 281 Ga. App. 563, 570 (3) (a) (636 SE2d 740) (2006).

[7] (Punctuation and footnote omitted.) Id. at 571 (3) (a).

[8] (Punctuation and footnotes omitted.) *Lucas v. Cranshaw*, 289 Ga. App. 510, 512 (1) (659

We conclude that the newspaper articles fairly, honestly, and with substantial accuracy, reflect statements in the investigative report identifying King as a suspect in the prison escape. Furthermore, Marney's affidavit reflects that she accurately reported statements made to her by the sheriff. King did not come forward with any evidence to rebut Marney's affidavit.[9] "While generally the issue of whether privilege exists is for the jury, summary judgment is proper where defendant[s] establish[ ] as a matter of law that [they] made privileged statements."[10] As appellants established as a matter of law that the content of the articles was privileged under OCGA § 51-5-7 (8), the trial court erred in denying their motion for summary judgment on this issue.

2. Appellants contend that the trial court erred in denying their motion for summary judgment on King's claim that the headline of the second article, "Escape accomplice arrested," constitutes libel per se. We agree.

"Imputing to another a crime punishable by law" is slanderous per se, OCGA § 51-5-4 (a) (1), and "the definition of slander in Georgia has been incorporated into the definition of libel."[11] King argues that the headline libeled him by implying that he was, in fact, an accomplice in the escape, a charge which was later dismissed. But a headline cannot be read in isolation; it must be read in conjunction with the article which it accompanies.

> A publication claimed to be defamatory must be read and construed in the sense in which the readers to whom it is addressed would ordinarily understand it. So the whole item, including [head]lines, should be read and construed together, and its meaning and signification thus determined. When thus read, if its meaning is so unambiguous as to reasonably bear but one interpretation, it is for the judge to say whether that signification is defamatory or not. If, upon the other hand, it is capable of two meanings, one of which would be libelous and actionable and the other not, it

---

SE2d 612) (2008).

[9] King attached as an exhibit to his brief interrogatory answers which, he contends, raise an issue as to the sheriff's statements, but we cannot consider them. "We are limited in our review to matters contained in the appellate record, and a party cannot use his brief as a procedural device to add evidence to the record." *McDowell v. State of Ga.*, 290 Ga. App. 538, 539, n. 1 (660 SE2d 24) (2008).

[10] (Punctuation and footnote omitted.) *Torrance*, supra at 571 (3) (a). Compare *Smith v. Vencare, Inc.*, 238 Ga. App. 621, 625-628 (2) (c)-(e) (519 SE2d 735) (1999) (physical precedent only) (in slander case against hospital social worker for repeating ill woman's statements against plaintiff/husband, jury issue existed on defense of qualified privilege).

[11] *Lucas*, supra at 515 (2).

is for the jury to say . . . which of the two meanings would be attributed to it by . . . whom it may be read.[12]

"In considering whether a writing is defamatory as a matter of law, we look at what construction would be placed upon it by the average reader."[13] Reading the headline in conjunction with the article, we conclude that the average reader would believe that King had been arrested and charged with aiding another to escape from custody, which was true at the time. The article states that deputies arrested King for aiding in the escape; that he allegedly gave a key to one of the prisoners; and that he "could face up to five years in prison if found guilty and convicted." As held in Division 1, the article is not libelous, and we conclude that the headline, standing alone, is not actionable.

*Judgment reversed. Johnson, P. J., and Ellington, J., concur.*

DECIDED JULY 17, 2009.

*Hull, Towill, Norman, Barrett & Salley, David E. Hudson,* for appellants.
*Clifton Boone,* for appellee.

---

[12] (Citations and punctuation omitted.) *Constitution Publishing Co. v. Andrews,* 50 Ga. App. 116, 117 (177 SE 258) (1934). Accord *Lucas,* supra at 513 (1).

[13] (Citation and punctuation omitted.) *Cox Enterprises,* supra at 803 (1).