Scott **MONGE,** Plaintiff,

v.

**MADISON COUNTY RECORD, INC.,** and Brian Timpone, Defendants.

No. 1:10–CV–0037–SCJ.

United States District Court, N.D. Georgia, Atlanta Division.

Aug. 4, 2011.

Daniel J. Hoppe, Jr., Samuel C. Harvey, The Law Office of Daniel J. Hoppe, Jr., Atlanta, GA, for Plaintiff.

Andrew G. May, Steven F. Pflaum, Neal Gerber & Eisenberg, LLP, Chicago, IL, Bruce Bramley Weddell, Burbage & Weddell, Atlanta, GA, for Defendants.

## *ORDER*

STEVE C. JONES, District Judge.

THIS MATTER is before the Court on Defendants' Motion to Dismiss [Doc. No. 40]. For reasons given below, Defendants' Motion is **GRANTED**.

## *BACKGROUND*

This lawsuit alleging defamation—inter alia—arises out of the publication of an article on October 25, 2007, in newspapers owned and operated by Defendant Madison County Record, Inc. (the "Article") (attached as "Attachment A"). The Article reported on Mr. Clark Kirkland's trials and tribulations as he attempted to litigate his silicosis claim, and the troubling behavior of Mr. Kirkland's attorneys—Michael Martin and Scott Monge.[1]

In 2004, Monge was retained as local Georgia counsel for Mr. Kirkland and his wife Sharon Kirkland, and Monge filed a claim on their behalf in a Georgia state court. (Second Am. Compl. [Doc. No. 38] ¶ 7.) That action was removed to the United States District Court for the Northern District of Georgia, and subsequently transferred in December of 2004 to the United States District Court for the Southern District of Texas as part of multi-district silicosis litigation. Docket, *Kirkland v. 3M Co.*, No. 1:04–cv–2152 (N.D.Ga. 2004). Judge Janis Jack presided over the action in the Texas district court. Docket, *Kirkland v. 3M Co.*, No. 2:04–cv–639 (S.D.Tex.2004).

In December of 2004, after the case was transferred, it became apparent that Mr. Kirkland's claim was barred by the statute of limitations, and the parties seem to agree that Monge was blameless. (Second Am. Compl. [Doc. No. 38] ¶ 8.) Mr. Kirkland, however, believed Martin was at fault. (First Am. Compl. [Doc. No. 24–1] Ex. 1.)

In January of 2005, both Monge and Martin tried to withdraw as Mr. Kirkland's attorneys. Docket, *Kirkland*, No. 2:04–cv–639 (S.D.Tex.2004). Monge moved to withdraw in both the Georgia federal and state courts, and in the Texas district court. (Second Am. Compl. [Doc. No. 38] ¶ 8); Docket, *Kirkland*, No. 2:04–cv–639 (S.D.Tex.2004). At that time, neither Georgia court had jurisdiction over Mr. Kirkland's case, but both granted Monge's motion to withdraw.[2] (Second Am. Compl. [Doc. No. 38] ¶ 8.) The Texas court did not grant either attorney's motion. Order No. 22 at p. 1, *Kirkland*, No. 2:04–cv–639

---

1. As discussed in this Court's Order dated July 15, 2011, under Federal Rules of Evidence 201 and 803(8), this Court will take judicial notice of the operative conduct, statements, and admissions set forth in this Court's and other courts' records. *See, e.g., Universal Express, Inc. v. U.S. S.E.C.*, 177 Fed. Appx. 52, 53 (11th Cir.2006) (holding that a district court adjudicating a motion to dismiss can take judicial notice of public documents records). Furthermore, this Court will take judicial notice of the contents of the Article, which Defendants' attached to their Motion to Dismiss. *See Hoffman–Pugh v. Ramsey*, 312 F.3d 1222, 1225 (11th Cir.2002) ("The 'publication' at issue here is the entire book, which was properly before the court on the motion to dismiss because [Plaintiff] referred to it in her complaint and it is central to her claims.").

2. Under 28 U.S.C. § 1446(d), once a case is removed, the state court can "proceed no further unless and until the case is remanded." As for the Georgia district court's order, "[o]nce a transfer under § 1407 becomes effective, the jurisdiction of the transferor court ceases and the transferee court has exclusive jurisdiction." *U.S. ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 238 F.Supp.2d 270, 282 (D.D.C.2002) (internal citations omitted).

(S.D.Tex. Jan. 25, 2005); (Order No. 21 [Doc. No. 40–2 Ex. 9, p. 67] p. 1.)

The Texas court scheduled a deposition of Mr. Kirkland for February 16, 2005 (the "Kirkland Deposition") at the request of a defendant in that action who wished to explore Mr. Kirkland's allegations against Martin. Mot. for Permission to Contact Pl. at *passim, Kirkland,* No. 2:04–cv–639 (S.D.Tex. Jan. 14, 2005); Order, *Kirkland,* No. 2:04–cv–639 (S.D.Tex. Jan. 20, 2005). Judge Jack ordered both Monge and Martin "to appear in person" for the court-monitored deposition. (Order No. 23 [Doc. No. 40–2, Ex. 10, p. 70] p. 3.) In her order dated February 16, 2005, Judge Jack noted that because Mr. Kirkland "had accused Martin of malfeasance, it was important for Monge to appear on Plaintiff's behalf during the deposition." (Order Setting Show Cause Hr'g [Doc No. 40–2, p. 75] Ex. 11, p. 2.)

Despite the fact that Monge was Kirkland's attorney of record and had been ordered to appear at the Kirkland Deposition, Monge did not show up. (*See Pl.'s Statement of Disputed Material Facts* [Doc. 27–1] ¶ 10 (admitting that Monge had not been in Texas on February 16, 2005 when the Kirkland Deposition was held); Hr'g Transcript at pp. 2, 4, *Monge v. Timpone,* 1:10–cv–00037–SCJ (July 14, 2011) (admissions by Monge's attorney that Monge was attorney of record in the Texas action, and that it "looks like" Monge had not attended the Kirkland Deposition).) According to Judge Jack, the deposition did not go well. Judge Jack observed that Martin failed to represent and defend Mr. Kirkland during the deposition; in her own words, "Martin succumbed to the urge to torpedo his client's case."[3] (Order No. 29 [Doc. No. 40–2, p. 38] Ex. 4, p. 168.) Judge Jack lamented

that "despite [Mr. Kirkland] being genuinely sick, despite his having two attorneys of record, and despite his being in a courtroom full of lawyers, he had no one to represent his interests."[4] (*Id.* [Doc. No. 40–2, p. 34–35] Ex. 4, p. 164–165.)

Right after the hearing, Judge Jack ordered Monge to appear the next day—February 17, 2005—"to show cause why he should not be held in contempt for failing to appear [at the Kirkland Deposition]." (Order Setting Show Cause [Doc. No. 40–2, p. 74] Ex. 11, p. 1.) This time, Monge appeared. (Second Am. Compl. [Doc. No. 38] ¶ 14.)

Over the months that followed, Monge repeatedly tried to withdraw from the Texas action to no avail, and Monge was still the attorney of record in the Texas court when the action was conditionally remanded to the Northern District of Georgia in August of 2005. Docket, *Kirkland,* No. 2:04–cv–639 (S.D.Tex. July 23, 2004). Monge alleges that Mr. Kirkland's case was then dismissed because it was time barred, and Mrs. Kirkland subsequently settled her claims. (Second Am. Compl. [Doc. 38] ¶ 13.)

On October 25, 2007, Defendants published the Article that prompted Monge's suit. (The Article [Doc. No. 40–4, p. 24] Ex. 27, p. 1.) The Article is entitled "Honest silicosis claimant 'torpedoed' by own Attorney, Jack says." (*Id.*) The Article makes the following statements that ostensibly refer to Monge:

• U.S. District Judge Janis Jack of Corpus Christi, Texas, found an honest silicosis suit among 10,000 phony ones, but an attorney for the honest plaintiff torpedoed his case and no other silicosis attorney would take him for a client.

---

**3.** The Court is not taking judicial notice of Judge Jack's findings, but simply what Judge Jack wrote in her order.

**4.** See footnote three above.

- Kirkland's attorneys, Michael Martin of Houston and Scott Monge of Dunwoody, Ga., stooped as low as any.
- The Kirklands sued in another Georgia court in 2004, with Monge and Martin as counsel.
- Martin and Monge moved to withdraw as Kirkland's counsel, but Jack denied the motions and ordered them to represent Kirkland at his deposition.
- On deposition day, Feb. 16, 2005, Martin showed up with an attorney of his own.

 Monge did not show up at all.

- In an order she signed in June 2005 she wrote, "... despite his being genuinely sick, despite his having two attorneys of record, and despite his being in a courtroom full of lawyers, he had no one to represent his interests."
- "Should Mr. Monge be permitted to withdraw, plaintiffs, both Georgia residents, would be left to proceed pro se," she wrote. "Requiring pro se litigants to prosecute a case in a court over a thousand miles from their residence would be a significant imposition...."
- In August 2005, Kirkland protested to the court that Monge continued trying to withdraw as his counsel and refused to notify him of filings.
- Monge replied that he "was not hired because of any experience dealing with silicosis claims, has no contractual relationship with Kirkland and has never met Kirkland."
- Monge wrote, "During the course of this litigation, it became apparent that Kirkland believed his claims were frivolous."
- Kirkland then settled with 3M and Ingersoll–Rand.

(The Article [Doc. No. 40–4, pp. 24–26] Ex. 27, *passim.*) The Article also details Martin's behavior as Mr. Kirkland's attorney. (*Id.*)

Monge took issue with the Article and filed suit in Georgia state court in June of 2009. (Compl., *Monge v. U.S. Chamber of Commerce*, 2009CV170559 (Ga. Sup.Ct. June 12, 2009) [Doc. 40–4, Ex. 29].) Monge voluntarily dismissed that action in November of 2009, and then re-filed essentially the same action in this Court. (Voluntary Dismissal Without Prejudice, *Monge*, 2009CV170559 (Nov. 18, 2009) [Doc. No. 40–4, Ex. 31].)

Monge has amended his complaint twice and now asserts seven counts: Count One, Tortious Interference with Business Relations; Count Two, Defamation; Count Three, Invasion of Privacy—False Light; Count Four, Fraud; Count Five, Negligent Misrepresentation; Count Six, Promissory Estoppel; and Count Seven, Bad Faith.

Defendants seek to dismiss all of Monge claims.

## DISCUSSION

### I. Legal Standard

A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009) (explaining "only a complaint that states a plausible claim for relief survives a motion to dismiss"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561–62, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (retiring the prior standard, which allowed a claim to proceed unless it appeared "beyond doubt" the plaintiff could not prove a set of facts that stated a claim). In *Iqbal*, the Supreme Court reiterated that although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949.

In *Twombly*, the Supreme Court emphasized that a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555, 127 S.Ct. 1955. Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555, 127 S.Ct. 1955 (internal citations and emphasis omitted).

## II. Count One: Defamation

In order to establish a claim for defamation, "a plaintiff must submit evidence of (1) a false and defamatory statement about himself; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special damages or defamatory words 'injurious on their face.'" *Lewis v. Meredith Corp.*, 293 Ga. App. 747, 748, 667 S.E.2d 716 (2008). "Truth is an absolute defense under Georgia law: if plaintiff cannot prove falsity, the libel and slander claim must fail." *Wolf v. Ramsey*, 253 F.Supp.2d 1323, 1349 (N.D.Ga.2003). Substantial truth is all that is required. "[M]inor factual errors which do not go to 'the substance, the gist, the sting' of the story" are not actionable. *Stange v. Cox Enter., Inc.*, 211 Ga.App. 731, 734, 440 S.E.2d 503 (1994).

### A. The Statement that "Monge Did Not Show Up at All" Is Not Defamatory

Defendants contend the statement that "Monge did not show up at all" is not defamatory because it is true. Monge counters that the statement is ambiguous, thus a jury must decide whether the statement is defamatory.

Generally, "the question whether a particular publication is libelous, that is, whether the published statement was defamatory, is a question for the jury. However, if the statement is not ambiguous and can reasonably have but one interpretation, the question is one of law [left to the judge]." *Cox Enters., Inc. v. Nix*, 274 Ga. 801, 803, 560 S.E.2d 650 (2002). In order to derive the meaning of a statement, a court can look to the surrounding phrases. *See id.* at 802, 560 S.E.2d 650 (looking to the language surrounding a statement to determine whether it was defamatory).

The statement that "Monge did not show up at all" is not ambiguous because in the context of the Article, the statement is subject to one reasonable interpretation: Monge did not appear at the Kirkland Deposition. In relevant portion, the Article states:

On deposition day, Feb. 16, 2005, Martin showed up with an attorney of his own.

Monge did not show up at all.

At the time, Kirkland faced surgery in a month for removal of his left lung.

Martin told Jack that in light of the motion to dismiss 3M, the deposition should not go forward.

Jack said she had not ruled on the motion and the deposition would proceed.

Martin said he wished to withdraw as Kirkland's counsel.

Jack said he could not. She said Kirkland needed representation because 3M would attack his case.

After Kirkland answered 3M's questions, Martin rose to question him. At that point, as Jack would write in her order, "Mr. Martin succumbed to the urge to torpedo his client's case."

Martin and Kirkland argued about the statute of limitations. Martin tried to persuade Jack that Kirkland's suit was time barred in 2001.

Jack told Martin that unless he had something helpful to his client, the deposition would end. Martin said nothing. After the hearing Jack granted Martin's motion to withdraw.

(The Article [Doc. No. 40–4] Ex. 27, p. 2.) The relevant portion of the Article discusses one event—the Kirkland Deposition—to which "Martin showed up" and "Monge did not show up at all."

Monge alleges that the Article "falsely claimed that Mr. Monge 'did not show up at all,' for the Texas proceedings." (Second Am. Compl. [Doc. No. 38] ¶ 14.) Monge, however, ignores the syntagmatic aspect of language. As previously discussed, a statement derives meaning from the words around it. *See Cox Enters., Inc.*, 274 Ga. at 803, 560 S.E.2d 650. For example, the fourteenth paragraph of Monge's Second Amended Complaint states:

> Second, the article falsely claimed that Mr. Monge "did not show up at all," for the Texas proceedings, although, in reality, Mr. Monge sent notice to the Texas court that he had been withdrawn as counsel by order of the judge in the Northern District of Georgia. Despite this, the court later ordered Mr. Monge to appear the next day and Mr. Monge did so.

(Second Am. Compl. [Doc. No. 38] ¶ 14.) In that passage, the clear meaning of "Despite this," is contingent upon the words surrounding that phrase. By looking to the sentence preceding the phrase, we understand that "Despite this" refers to Monge sending his notice of withdrawal to the Texas court. Likewise, when the Article states that "Monge did not show up at all," the reader must fill in a blank to determine what Monge was absent from. The preceding sentence in the Article references the Kirkland deposition, as do the nine sentences that follow. It is thus abundantly and singularly clear that the

Article does not state that Monge failed to show up "at all ... for the Texas proceeding," nor that he failed to show up to a doctor's appointment, nor a meeting, nor a dinner: the Article states that Monge failed to show up to the Kirkland Deposition.

The question, thus, is whether Monge truly "did not show up at all" to the Kirkland Deposition; in which case, the statement is not defamatory. Despite Monge's artful attempts to avoid admitting that he failed to attend the Kirkland Deposition, he admits as much in the Statement of Disputed Material Facts he previously filed in this action. Monge writes:

> Second, the article falsely claimed that Mr. Monge "did not show up at all," for the Texas proceedings. However, the record shows that Mr. Monge sent notice to the Texas court prior to the hearing that he had been withdrawn as counsel by order of the judge in the Northern District of Georgia. The court did not contact Mr. Monge regarding his objections until after the deposition. At that time, Mr. Monge went to Texas the next day on February 17, 2005. This appearance in the Texas court is a matter of public record. The Court took no action against Mr. Monge. Despite any contentions otherwise, the quote is that Mr. Monge did not show up at all, not that he was not present for the deposition.

(Statement of Disputed Material Facts [Doc. No. 27–1] ¶ 10 (internal citation omitted).) The above passage is susceptible to one reasonable interpretation: Monge notified the Texas court that he had withdrawn; he never heard back; he was not in Texas when the Kirkland Deposition was held on February 16, 2005; he failed to appear at the Kirkland Deposition; and on February 17, 2005, he traveled to Texas from a location outside that state. Indeed,

Monge never alleges that he attended the Kirkland Deposition. The ineluctable conclusion is that Monge never appeared at the Kirkland Deposition; therefore, the statement that "Monge did not show up at all" is not defamatory because it is true.

### B. The Statement that Monge Torpedoed His Client's Case Is Not Defamatory

█ The statement that Monge "torpedoed" Kirkland's case is not defamatory because it is an opinion premised upon non-defamatory facts that were set forth in the Article.

█ "Georgia law unquestionably excludes from defamation liability any statements that may be characterized as rhetorical hyperbole or are clearly recognizable as pure opinion because their factual premises are revealed." *800 Mktg. Solutions, Inc. v. GMAC Ins. Mgmt. Corp.*, 2008 WL 2777140, at *6 (M.D.Ga. 2008) (internal quotation marks omitted). A statement of opinion, however, is actionable if, and only if, it implies the allegation of undisclosed defamatory facts as the basis for the opinion. *Jaillett v. Ga. Television Co.*, 238 Ga.App. 885, 890, 520 S.E.2d 721 (1999) (quoting Restatement (Second) of Torts § 566) (internal quotation marks omitted). Therefore, "[i]f an opinion is based upon facts already disclosed in the communication, the expression of the opinion implies nothing other than the speaker's subjective interpretation of the facts," and the opinion is not actionable. *Id.* at 890, 520 S.E.2d 721.

For example, in *Kirsch v. Jones*, 219 Ga.App. 50, 464 S.E.2d 4 (1995), a newspaper accused a lawyer of bungling a client's case, and that statement was held to be a mere expression of opinion and hyperbole that was not actionable. In the *Jaillett*

case, a newscast stated that the plaintiff had "ripped off" its client, but the court found no defamation because the statement was an opinion premised upon facts disclosed in the story.

Here, the Article states, "attorneys for [Kirkland] torpedoed his case," and Monge seems to be one of the attorneys referred to in that phrase. The Article's use of the word "torpedo" is obvious hyperbole and rhetoric: Monge did not literally propel a torpedo at Kirkland's case. It is of course debatable whether Martin "torpedoed" Kirkland's case in the figurative sense; but that is the point. The "torpedoed" statement cannot be proven true or false, it is merely an opinion. In the context of the Article, the word "torpedo" strongly expresses Defendants' opinion that Monge's actions and absence undermined Kirkland's case. In support of that opinion, the Article set forth the following non-defamatory facts (1) Monge disobeyed Jack's order requiring him to attend the Kirkland Deposition; (2) "Kirkland protested to the court that Monge continued trying to withdraw as his counsel and refused to notify him of filings," and (3) Monge told the court that Kirkland believed his own claims were frivolous.[5] (The Article [Doc. 40–4] p. 2–3.) Defendants opinion is thus "based upon facts already disclosed in the communication, [and] the expression of the opinion implies nothing other than [Defendants'] subjective interpretation of the facts." *See Jaillett*, 238 Ga.App. at 890, 520 S.E.2d 721.

Monge argues that it was impossible for him to undermine Kirkland's case, which was barred by the statute of limitations before Monge was retained; and accordingly, the "torpedoed" statement is not an opinion because it can be proven false.

---

**5.** The above listed facts are not defamatory because they are true. *See Wolf v. Ramsey,* 253 F.Supp.2d 1323, 1349 (N.D.Ga.2003).

However, in the context of the Article, Monge's argument is unreasonable. *See Garland v. State,* 211 Ga. 44, 46, 84 S.E.2d 9 (1954) ("The intent and meaning of the alleged defamatory statement must be gathered not only from the words singled out as being libelous, but from all parts of the publication, in order to show its meaning."). The Article is clear that Martin, not Monge, was allegedly to blame for Kirkland's case being barred by the statute of limitations. The Article attacks Monge because he failed to represent his client despite Judge Jack ordering him to do so. Again, reasonable minds could quibble over whether Monge's absence and attempts to withdraw rose to the level of torpedoing Kirkland's case, but there is no right answer: the "torpedoed" statement is an opinion that is not actionable.

### C. The Statement that Monge "Stooped as Low as Any" is Not Defamatory

██ The statement that Monge "stooped as low as any" is not defamatory because it is an opinion premised upon non-defamatory facts that were set forth in the Article. *See 800 Mktg. Solutions, Inc.,* 2008 WL 2777140, at \*6; *Jaillett,* 238 Ga. App. at 890, 520 S.E.2d 721. The "stooped as low as any" statement is clearly an opinion that amounts to nothing more than hyperbole and rhetoric. There is no measuring stick that we can hold up to Monge's actions in order to assess the truth or falsity of the "stooped" statement. Furthermore, the statement is premised on a wealth of non-defamatory facts set forth in the Article: namely that Kirkland needed representation, Monge did not provide that representation despite Judge Jack's order, and Monge continually tried to withdraw.

### III. Count Three: False Light

██ Monge does not state a false light claim because the Article portrayed Monge's true conduct. It is black letter law that "the plaintiff in a false light case must establish that the publicity was in fact false." *Pospicil v. Buying Office, Inc.,* 71 F.Supp.2d 1346, 1362 (N.D.Ga. 1999). Moreover, the falsity cannot be based on mere innuendo. *Zarach v. Atlanta Claims Ass'n,* 231 Ga.App. 685, 690, 500 S.E.2d 1 (1998). In *Zarach,* a false light claim was dismissed because it was based on an attenuated, speculative interpretation of the defendants' actions. *Id.* In that case, the defendant gave a presentation warning of insurance fraud by chiropractic clinics that advertised to the Vietnamese community. *Id.* The plaintiffs owned a chiropractic clinic that advertised in Vietnamese newspapers, and the defendants' presentation materials included a clipping of plaintiffs' advertisement. *Id.* The court held that the "[p]laintiffs were not presented in a false light; they were depicted as being what they were—professionals targeting Vietnamese patients for their insurance claims business." *Id.* The court reasoned that "certain people at the seminar might speculate from the inclusion of plaintiffs' advertisement in the 'Fraud Indicators' section of the material that plaintiffs were participating in insurance fraud." *Id.* (internal quotation marks omitted). "But whatever innuendos people may draw from such inclusion is a matter of individual thought processes, not enhanced, abetted, distorted or misrepresented by the inclusion of the advertisement in the seminar material." *Id.*

██ Finally, "a constitutionally privileged statement of opinion cannot form the basis of a claim for invasion of privacy by placing a person in a false light." *S & W Seafoods Co. v. Jacor Broad. of Atlanta,* 194 Ga.App. 233, 237, 390 S.E.2d 228 (1989) (recognizing that a defendant's highly critical statements about a restaurant's food and service were constitutional-

ly privileged and could not support a false light claim.)

Here, Monge alleges that the Article wrongfully portrayed him as a lawyer who failed to act in an ethical and competent manner, and he takes issue with numerous statements in the Article "regarding [his] withdrawal from the case, allegations that Mr. Kirkland's [claims were settled], and third party's comments regarding his duties that were contradicted by other pleadings and that party's own statements." (Second. Am. Compl. [Doc. 38] ¶¶ 45–46.) In Monge's response brief, he also argues that "the Article places [him] in the false light of having damaged Mr. Kirkland's claim." (Pl.'s Br. [Doc. No. 49] p. 20.)

 First, to the extent the Article portrays Monge as an unethical and incompetent lawyer who damaged his client's case, such portrayal is a constitutionally privileged statement of opinion that cannot form the basis for a false light claim. *See S & W Seafoods Co.,* 194 Ga.App. at 237, 390 S.E.2d 228.

 Second, Monge is complaining about innuendo. The Article does not explicitly state that Monge was unethical, incompetent, or that he "damaged" Mr. Kirkland's case. The Article simply disclosed Monge's actual behavior: he failed to represent Mr. Kirkland despite Judge Jack's order requiring Monge to attend the Kirkland Deposition, and he repeatedly attempted to withdraw from the case. "[W]hatever innuendos people may draw from such [facts] is a matter of individual thought processes," and cannot support a claim for false light. *See Zarach,* 231 Ga. App. at 690, 500 S.E.2d 1.

 Third, the Article does not place Monge in a false light by depicting Monge's attempts to withdraw from the Texas Action. The Article states that Monge moved to withdraw before the Kirkland Deposition, which motion was denied, and that Kirkland complained to the Texas and Georgia courts that Monge continued trying to withdraw after the deposition. All of which is true. The Article even gave Monge's side of the story, quoting Monge's explanations for his attempts to withdraw. Because the Article gives a true—and ostensibly balanced—account of Monge's attempts to withdraw, the requisite element of falsity is missing from this aspect of Monge's false light claim.[6]

 Fourth, the Article does not place Monge in a false light by stating that Mr. Kirkland settled his claims. This Court is willing to take Monge at his word that Mr. Kirkland did not settle his time barred claims, and in fact, Mr. Kirkland's wife's claims were settled. In this regard, the Article has made a false statement that places *Mr. Kirkland,* not *Monge,* in a false light. Monge argues he was cast in a false light because the statement insinuates that Mr. Kirkland had a valid claim that could have been damaged by Monge's failure to appear at the Kirkland Deposition. Again, even if the Article insinuates that Monge damaged Mr. Kirkland's case, this would be an opinion that cannot for the basis of a false light claim.

 Lastly, this Court is unsure of what Monge refers to when he alleges he was cast in a false light by the Article's description of a "third party's comments regarding his duties that were contradict-

6. Monge seems to argue that he was placed in a false light because prior to the Kirkland Deposition, Monge had withdrawn as Monge's legal representative in Georgia. It is irrelevant that Monge procured a withdrawal from Georgia courts that lacked jurisdiction over Kirkland's litigation. There was one court that mattered when Kirkland was deposed in February of 2005: the Texas district court. And that court refused to let Monge withdraw, which the Article accurately reported.

ed by other pleadings and that party's own statements." This Court assumes Monge is referring to the following line in the Article: "In August 2005, Kirkland protested to the Court that Monge continued trying to withdraw as his counsel and refused to notify him of filings." Like many of the other statements Monge points to, this one is also true. During the Summer of 2005, Monge continued his attempts to withdraw from the Texas action; and in August of that year after the Texas court suggested remanding the case to the Northern District of Georgia, Mr. Kirkland notified the Georgia district court that Monge "has made ... repeated attempts to withdraw as counsel" and Monge "refuse[d] to notify [Kirkland] of any court filings." Pl.'s Notice of Assertion of Rights and Request to Be Notified at p. 2, *Kirkland,* No. 1:04–cv–2152 (N.D.Ga. Aug. 22, 2005). Monge presumably finds the Article disingenuous because he claims that by August of 2005, he had already withdrawn. However, at that time, Mr. Kirkland's action was still before the Texas court, in which Monge was still the attorney of record. Therefore, Monge has not met the falsity element of his prima facie case, nor does the Article cast him in a false light.

## IV. Count I: Tortious Interference with Business Relations

 Monge does not state a claim for tortious interference with business relations because he cannot meet the required "wrongful conduct" element. Under Georgia law, to establish a prima facie case for tortious interference with business relations, a plaintiff must show that the defendant "(1) acted improperly and without privilege, (2) purposely and with malice with the intent to injure, (3) induced a third party or parties not to enter into or continue a business relationship with the plaintiff, and (4) for which the plaintiff suffered some financial injury."

*DeLong Equip. Co. v. Wash. Mills Abrasive Co.,* 887 F.2d 1499, 1518 (11th Cir. 1989) (internal quotation marks omitted). With respect to the first requirement, "[a]n essential element of a claim for tortious interference with business relations is that the alleged tortfeasor used wrongful means to induce a third-party not to enter into or continue a business relationship with the plaintiff." *Ultrasound Imaging Corp. v. Hyatt Corp.,* 2007 WL 2345256, at *8 (N.D.Ga.2007) (dismissing tortious interference claim due to failure to allege that defendant acted improperly and without privilege). Wrongful conduct typically involves "predatory tactics such as physical violence, fraud or misrepresentation, [or] defamation." *Id.*

 Monge bases his claim for tortious interference upon the following allegation: "Defendants' misleading statements and conduct with prospective clients of Plaintiff were improper actions and wrongful conduct undertaken without privilege." (Second Am. Compl. [Doc. No. 38] ¶ 27.) It appears Monge thus relies on his defamation and false light claims to show wrongful conduct; because those claims fail, Monge cannot establish the first element of his claim for tortious interference with business relations.

Monge attempts to save his tortious interference claim by arguing that his claims of fraud and misrepresentation are sufficient to establish the wrongful conduct element. First, he makes no such allegation in his Complaint: Monge's fraud and misrepresentation claims are based on alleged communications to him and his lawyer, whereas he bases his tortious interference claims upon "statements and conduct with [his] prospective clients." (*Id.*) Second, Monge's fraud and misrepresentation claims fail as a matter of law, and therefore provide no support for his tortious interference claim.

## V. Counts Four, Five, and Six: Fraud, Negligent Misrepresentation, and Promissory Estoppel

 Monge does not state a claim for fraud, negligent misrepresentation, or promissory estoppel because he cannot show damages. The gist of these three claims is that Defendants misled Monge into dismissing his earlier state court. That earlier action asserted claims for tortious interference with business relations, defamation, and bad faith that are essentially identical to Counts One, Two, and Seven here; and as this Order explains, these claims are meritless. (*Compare* State Court Compl. at *passim, Monge v. U.S. Chamber of Commerce,* No. 2009CV170559 (Ga. Sup.Ct. June 12, 2009) [Doc 40–4, Ex. 29] *with* Second Amended Compl. [Doc. No. 38] at *passim.*) The meritless nature of Monge's state court lawsuit precludes him from establishing the damages necessary to state claims for fraud, negligent misrepresentation, or promissory estoppel. *See Chiaka v. Rawles,* 240 Ga.App. 792, 795, 525 S.E.2d 162 (1999) (fraud requires showing of "damages suffered by plaintiff"); *Hardaway Co. v. Parsons,* 267 Ga. 424, 426, 479 S.E.2d 727 (1997) (negligent misrepresentation requires showing of "economic injury" suffered by plaintiff); *Rental Equip. Group, LLC v. MACI, LLC,* 263 Ga.App. 155, 157, 587 S.E.2d 364 (2003) (promissory estoppel requires showing that "plaintiffs changed their position to their detriment by surrendering, forgoing, or rendering a valuable right").

## VI. Count Seven: Bad Faith

 Count Seven of Monge's Amended Complaint purports to state a cause of action for bad faith pursuant to O.C.G.A. § 13–6–11. "Section 13–6–11 does not create an independent cause of action." *Brown v. Baker,* 197 Ga.App. 466, 467, 398 S.E.2d 797 (1990). The statute merely authorizes the recovery of attorneys' fees, in certain circumstances, by a successful plaintiff "as separate special damages flowing from the underlying tort." *In re Ellerbee,* 177 B.R. 731, 746 (Bankr.N.D.Ga. 1995). Because Monge cannot assert a separate cause of action pursuant to section 13–6–11, Count Seven does not state a claim.

## CONCLUSION

For the reasons given above, Defendants' Motion to Dismiss [Doc. No. 40]. For reasons given below, Defendants' Motion is **GRANTED** and the Clerk is **DIRECTED** to close the instant action.